Appeal of **ROBERT W. WILLIAMS,**          **Docket No. 1652.**
             Executor   of   Estate   of
**ELLEN C. BONAPARTE.**

> A taxpayer who acquires property by virtue of the last will and testament of a deceased testator, free and clear from any restrictions or qualifications, and thereafter sells one parcel of such property for an amount less than its appraised value, realizes a loss sustained from the sale or other disposition of the property as defined in section 202 (a)(3), and the amount of such loss is a deduction from gross income under the provisions of section 214 (a)(5) of the Revenue Act of 1921.

Submitted March 26, 1925; decided May 5, 1925.

*Mr. R. W. Williams,* executor of the estate of Ellen C. Bonaparte, for the taxpayer.

*Briggs G. Simpich, Esq.,* for the Commissioner.

Before SMITH, PHILLIPS, and TRUSSELL.

This appeal involves an alleged deficiency in tax in the amount of $1,516.09 for the year 1923 asserted by the Commissioner against Ellen C. Bonaparte, and is predicated upon the disallowance of a loss arising from the sale of real property acquired by her under the last will of her late husband, Charles J. Bonaparte.

### FINDINGS OF FACT.

Charles J. Bonaparte died on June 28, 1921, leaving a last will and testament by which he devised and bequeathed to his wife, Ellen C. Bonaparte, his entire estate, except certain cash legacies. The pertinent part of the will is as follows:

> Second: All the rest, residue and remainder of my property and estate, whether real or personal and wheresoever situate, including any whereof I may be authorized to dispose by virtue of any power of testamentary disposition, I give, devise and bequeath absolutely and forever to my wife, Ellen C. Bonaparte, such devise of the realty being in fee simple to her, her heirs and assigns or to the full extent of my own interest, estate or power of disposition therein.
>
> Third: It is my desire that my said wife shall use and if need be, exhaust the corpus, no less than the income of my property and estate, so as aforesaid given, devised and bequeathed unto her, to assure her own comfort and well being during the remainder of her life.

By virtue of said last will Ellen C. Bonaparte acquired, on June 28, 1921, fifty pieces or parcels of real estate in or near the City of Baltimore, Md. One of these pieces of property was, and is known as, 601–603 Park Avenue, Baltimore, which had been, since about 1835 to and including June 28, 1921, used as a residence by Charles J. Bonaparte and his immediate ancestors. For some years

prior to his death Charles J. Bonaparte had maintained two residence properties, the one at 601–603 Park Avenue, Baltimore, being used as a residence each year from about December 1 to May 1 of the following year; the remaining part of each year was spent in another residence maintained by him at a country place known as Bella Vista, located about fourteen miles from Baltimore. He had treated the latter place as his legal residence and domicile and the place at which he exercised the right of voting in elections under the laws of Maryland.

In the administration and settlement of the estate of Charles J. Bonaparte, the property 601–603 Park Avenue was duly appraised in accordance with the laws of the State of Maryland as having a value of $60,000 at the time of Charles J. Bonaparte's death on June 28, 1921. This appraised value of $60,000 was included in the return made by the representatives of the estate of Charles J. Bonaparte under the laws of the United States levying taxes upon the transfer of estates of decedents, and under that return the appraised valuation of $60,000 placed upon this property was accepted by the Commissioner in the adjustment of the estate tax.

At the time of the death of Charles J. Bonaparte, he and his family were established in the Bella Vista residence. Ellen C. Bonaparte never returned to the Park Avenue residence except for occasional visits for the purpose of collecting and transferring family records and papers which had been kept at that place. Seventeen days after the death of Charles J. Bonaparte she left Bella Vista and traveled in Maine and New Hampshire, returning to Baltimore on or about September 25, 1921, at which time she leased an apartment in the Severn Apartment House, where she made her home until about June 1, 1922, although during that winter she spent some time in California. On or about the 22nd day of May, 1922, she entered into a contract to purchase a small residence property in a suburban residence section of Baltimore, known as 227 Chancery Street, Guilford. The final settlement of this contract to purchase was made on August 1, 1922. During the summer of 1922 she traveled in New York and Connecticut. Returning to Baltimore in the fall, she lived for about six weeks at the Stafford Hotel, Baltimore, and established herself in her new residence at 227 Chancery Street, Guilford, about December 1, 1922.

During the month of September, 1921, within three months after the death of Charles J. Bonaparte, she placed the property at 601–603 Park Avenue in the hands of Iglehart & Company, real estate dealers and brokers of Baltimore, with instructions to offer the said property for sale, and, pending a sale, to offer the same for rent. Iglehart & Company immediately advertised the said property both for sale and for rent and made an effort to sell at the appraised value of $60,000. Signs were placed upon the property announcing that it was for sale and for rent, and these signs remained there continuously until the property was finally disposed of in 1923. During the last four months of 1921 and the first ten months of 1922, Iglehart & Company found it impossible to sell the property at the appraised value of $60,000. They also found that it was impossible to rent the same at any acceptable figure. In the spring of 1922, Ellen C. Bonaparte instructed Iglehart & Company to procure from a competent architect estimates of the cost of remodeling the Park

Avenue house so that it might be leased for apartments. This investigation resulted in the determination that such remodeling would be too expensive to be undertaken. In November, 1922, Iglehart & Company received an offer to purchase the Park Avenue property at $42,500. This offer was accepted and the sale completed by the payment of the purchase price on February 6, 1923. Out of this purchase price Ellen C. Bonaparte paid brokers' commissions and other selling expenses amounting to $1,196.25, leaving her as the net proceeds of the sale $41,303.75, and thus sustained a net loss of $18,696.25.

When she made her income-tax return for the calendar year 1923, she claimed the amount of $18,696.25 as a deduction from gross income under the provisions of the Revenue Act of 1921. Ellen C. Bonaparte died on June 23, 1924, and Robert W. Williams, of Baltimore, Maryland, was duly appointed and qualified as executor of her estate.

The Commissioner, in auditing the income-tax return of Ellen C. Bonaparte for 1923, disallowed the claimed loss of $18,696.25 and asserted a deficiency in tax in the amount of $1,516.09, from which her executor brings this appeal.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

TRUSSELL: This appeal involves the right of the taxpayer to claim as a deduction from gross income the amount of a loss upon a sale of property acquired under the terms of the last will and testament of her deceased husband, and is governed by the provisions of the Revenue Act of 1921; sections 202 (a) (3) and 214 (a) (5).

The record of this appeal establishes the fact that Ellen C. Bonaparte acquired the property known as 601–603 Park Avenue, Baltimore, on June 28, 1921, by devise from her late husband; that the said property was duly appraised in pursuance to the laws of the State of Maryland and the estate-tax laws of the United States as having a value of $60,000, and that such appraisal was accepted by the Commissioner for the purpose of determining the amount of estate taxes due upon the transfer of the estate of Charles J. Bonaparte. These facts are not controverted in this appeal and no question has been raised as to the propriety or the validity of the appraisal. It is thus established that the fair market value of this property on June 28, 1921, was, so far as this appeal is concerned, the amount of $60,000. This property remained in the possession of Ellen C. Bonaparte until February 6, 1923, and the net proceeds received from its sale were $41,303.75, thus establishing the loss on the basis of its appraised value on the date of acquisition of $18,696.25. The Commissioner has disallowed this loss for the alleged reason that "such loss did not arise from a transaction entered into for profit."

Under the provisions of the will, Ellen C. Bonaparte received the property known as 601–603 Park Avenue, together with 49 other separate tracts or parcels of improved real estate in or near

the City of Baltimore. She received this property, and all of it, absolutely and without any qualifications or restrictions. She received it free from all the uses to which each or any tract had been theretofore devoted, and equally free from any or all, if such existed, of the family traditions which may have theretofore pertained to any particular piece of the property so received. She received it, as expressed in the will, for her exclusive use and benefit in order that she might, either through the use of the property or its disposition, provide for her comfort and well-being during the remainder of her life. In the will it was expressly stipulated that she was to " use, and if need be, exhaust, the corpus no less than the income of my property and estate."

It is plain from the terms of the language of the will, and it is no doubt equally true as a matter of law irrespective of the terms of the will, that the taxpayer came into the possession and title to each and all of the properties received from her deceased husband with absolute freedom and at her own election to use, enjoy, or dispose of each and any of such properties in such manner as she might from time to time elect. In her use and disposition of such properties she was under no obligation to be guided in any manner by any of the former uses or traditions which may have previously attached to any particular parcel of property so received by her. Upon coming into possession of such property and all of it, it devolved upon her so to determine the uses of such properties and each of them as would contribute most to her comfort, her well-being, and in so doing she must as to each and every of such properties handle the same in such a manner as would result in the return to her of as large an amount of income and profits as could be procured.

In the exercise of her prerogatives of absolute ownership she, within a few weeks after receiving the property of her deceased husband, offered the property at 601–603 Park Avenue for sale and also for rent in the reasonable and businesslike expectation that it could thus be made to produce an income for her use and benefit. She placed this property in the hands of a real estate agent with instructions to sell at its appraised value, and also with instructions to rent the same if possible in order that it might be producing an income pending the time when it might be sold. The real-estate brokers advertised it both for rent and for sale at its appraised value. After approximately a year and a half, during which time no one had been willing to rent the property and there had been no offer to buy at the appraised value, the taxpayer, finding the property to be a dead load upon her hands, productive of nothing but continued losses in the shape of taxes and other carrying charges, and finding it was impossible to sell the same at the appraised value, and after consulting with experienced real-estate operators, consented to dispose of the property at less than its appraised value in order that she might be relieved of the continual losses due to the maintenance and upkeep of the property, and in the expectation of receiving income from such funds as could be procured from its sale at a reduced price. Therefore, in November, 1922, she entered into a contract to dispose of the property at the figure at which it was finally sold in February, 1923.

The record clearly shows that the taxpayer, from the time she received this property, planned to rent it, and planned to sell it, in order to produce gains if possible, and finally did dispose of it, receiving about $41,000 therefor. The record convinces us that the transaction described was in every respect a transaction entered into for profit and that it comes clearly within the meaning of provisions of law, and that the immediate loss arising out of this transaction is such a loss as the law contemplated should be deducted from gross income during the year in which it was sustained.

We are, therefore, of the opinion that the Commissioner erred in disallowing the loss as a deduction and that his asserted deficiency in tax must now be disallowed.