1114

W. S. FARISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LIBBIE RICE FARISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81145, 81146, 83295, 83296.   Promulgated December 9, 1937.

*Walter E. Barton, Esq.*, and *J. L. Block, C. P. A.*, for the petitioners.

*DeWitt M. Evans, Esq.*, and *Spalding Glass, Esq.*, for the respondent.

1118

OPINION.

HILL: During the taxable years 1932 and 1933 petitioner was a member of two partnerships known as the Huisache Stables and Farish, Wiess & Evans, respectively, each of which sustained a net loss in each of those years. Petitioner contends that he is entitled to deduct his distributive share of such net loss either as ordinary and necessary expenses paid or incurred in carrying on a trade or business, or as losses incurred in a trade or business and not compensated for by insurance or otherwise, or as losses incurred in transactions entered into for profit, though not connected with the trade or business, within the meaning of section 23 of the Revenue Act of 1932.

The amounts of net losses sustained by the partnerships, and the amounts of petitioner's distributive shares, have been stipulated by the parties and set out in our findings of fact above, but respondent disallowed the deductions claimed on the theory that the partnerships represented "pleasure enterprises" and not businesses or transactions entered into for profit.

Many cases involving similar questions have been decided by both the Board and the courts. Among those in which the deductions were allowed as business expenses or losses, petitioner cites: *Wilson* v. *Eisner*, 282 Fed. 38; *Thomas F. Sheridan*, 4 B. T. A. 1299; *Hamilton F. Kean*, 10 B. T. A. 97; *Walter P. Temple*, 10 B. T. A. 1238; *Commissioner* v. *Widener*, 33 Fed. (2d) 833; *James Clark et al., Executors*, 24 B. T. A. 1235; *Commissioner* v. *Field*, 67 Fed. (2d)

876; *Whitney* v. *Commissioner*, 73 Fed. (2d) 589; *William Buchsbaum*, 36 B. T. A. 21.

Respondent cites, among others, the following cases in which the deductions were disallowed: *Harry C. Fisher*, 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014; *Thatcher* v. *Lowe*, 288 Fed. 994; *Reginald C. Vanderbilt*, 5 B. T. A. 1055; affirmed in *Deering* v. *Blair*, 23 Fed. (2d) 975, 976; *Louise Cheney*, 22 B. T. A. 672.

The facts and circumstances vary so widely, that any attempt to analyze and discuss in detail the cited decisions would unduly prolong this opinion to no useful purpose. Each case must stand on its own bottom. However, certain general rules are laid down which may be helpful in arriving at a correct conclusion under the facts of the present proceedings.

Unless it can fairly be said from the evidence that the ventures in question constituted trades or businesses carried on by the partnerships, or that the losses resulted from transactions entered into for profit, the deductions claimed by petitioner do not come within . the statute. The question involves a matter of intention, which we must determine not alone from petitioner's statement that the enterprises were entered into for profit, but from the surrounding facts and circumstances as well.

It has been held that repeated losses do not necessarily indicate that the enterprise was not conducted as a business, *Plant* v. *Walsh*, 280 Fed. 722, but where the venture results only in loss year after year *without any reasonable prospect of profit*, the rule is otherwise. In *Reginald C. Vanderbilt*, *supra*, the Board, in holding that the stock-breeding and produce farm operated by the petitioner was not a business conducted for profit, said at page 1059:

In the instant proceeding the enterprise was established at least twelve years before the first taxable year, and * * * sustained losses in each year in which it was operated. In such conditions the operating losses must have extinguished the original invested capital before 1918, and, had the farm been operated for business purposes by anyone relying on the receipts therefrom for livelihood or income, it would probably have been sold by the sheriff long before the beginning of the taxable years here in question.

In affirming our decision, the Court of Appeals, after quoting in part the foregoing extract, expressed the opinion that the Board was justified in its conclusion that the farm was operated "not as a business for profit." Applying the same rule in *Thatcher* v. *Lowe*, *supra*, the court remarked that in ascertaining the intention of the taxpayer it could "see no escape from making the crux of the determination his receipts and expenditures."

The Huisache Stables partnership involved in the present case was organized in 1928 for the purpose of breeding, training, and selling polo ponies. At the end of the taxable year 1933 there had been no

income and the operating expenses then totaled $45,606.05. The capital investment was $16,494.54. Thus at the end of the first five years of operation, the expenses amounted to nearly three times the invested capital.

At the end of 1933 the partnership had 175 horses, including stallions and brood mares. Excluding the latter, about 60 percent of the remainder, or 70 horses, represented prospective polo ponies, or horses that might be developed into polo ponies. The cost of those 70 ponies up to that time was approximately $650 each, to which must be added the cost of maintenance and training over a further period of not less than four years, as well as the expense of shipping to market, sales commissions, possible losses from death, and other items. At the time of the hearing in 1937, no polo ponies had been sold, but it was expected that shortly thereafter some 10 to 20 ponies would be shipped to the eastern market for sale. The average sale price of polo ponies was about $750 each.

We think it is apparent from these facts that if the anticipated percentage of the horses bred and raised by the partnership were successfully developed into polo ponies, unless they could be sold at prices in excess of the average, the partnership would sustain considerable loss. Approximately nine years after the organization of the partnership, during which time it had consistently sustained an operating loss each year, it had only 10 to 20 polo ponies ready for sale. What they were sold for, or whether they were sold at all, we do not know. But certainly no facts are disclosed by the record which persuade us that there was any reasonable basis to anticipate a future realization of profit from the operations of the partnership, commensurate with the capital invested.

The records suggest that petitioner is a man of sound business judgment. During the taxable years he was an executive of large corporations, and had an income from investments and salaries of approximately $200,000 per annum. The probability of realizing a fair profit from the breeding of polo ponies in the circumstances shown was so remote as to negative the notion that the petitioner was induced to enter into the venture with any such expectation. It was entirely outside the scope of his prior business activities. What, then, was his primary motive in becoming a member of the partnership? It is not shown that petitioner played polo or was particularly interested in the game. However, his son and two brothers played polo, and S. P. Farish appears to have been a player of prominence and an enthusiast for the sport. They conceived the idea of breeding a new and perhaps outstanding strain of polo ponies by crossing thoroughbred stallions with common Texas and Arizona mares. The accomplishment of such a result might well have been

considered by petitioner and his brother, S. P. Farish, who was also a man of means, as sufficient compensation even if the venture otherwise produced no monetary gain. We need not decide. Doubtless it was hoped that gain might be realized or at least that the venture would pay its own way, but the facts, in our opinion, do not reasonably support the conclusion that petitioner's primary or actuating motive was the expectation of realizing reasonable profits on his investment in the Huisache Stables partnership.

Much the same general situation existed with respect to the partnership of Farish, Wiess & Evans. The predecessor partnership, known as Paradise Stock Farms, was organized about February 1929, to breed race horses. This partnership had only losses, and during the taxable years was in process of liquidation. Like the Huisache Stables, the venture was foreign to petitioner's usual line of business activities and no facts have been established which reasonably indicate that it was a business carried on for profit or that there was any reasonable expectation of profit. Petitioner devoted only a negligible portion of his time to the affairs of either of the partnerships. His participation appears to have been limited, mainly to the contribution, of capital.

Respondent has determined that neither partnership above mentioned was engaged in carrying on a trade or business, and that neither constituted a transaction entered into for profit. Petitioner has the burden of proving by a preponderance of the evidence that such determination is erroneous. This, we think, he has wholly failed to do. Accordingly, on the first issue, respondent's action is approved.

The second issue is whether the "Ohio Oil Group", which was engaged in the purchase and sale of stock of the Ohio Oil Co. in 1932, is taxable as a corporation or a partnership. Petitioner and his wife were members of the group in 1932. The group sustained a capital loss in that year, of which the pro rata share of petitioner and his wife was $9,741.68. This amount was claimed in their return as a capital net loss, and the deduction was disallowed by respondent on the ground that the group was an association taxable as a corporation. The parties have stipulated that if the Board should hold that the group is taxable as a partnership, the claimed deduction is allowable.

The facts in the instant case are in all material respects similar to those in *N. B. Whitcomb Coca-Cola Syndicate*, 35 B. T. A. 1031, where we held that the syndicate was not an association taxable as a corporation. That decision is controlling here, and therefore on the second issue respondent's determination is reversed.

*Judgment will be entered under Rule 50.*