ROBERT H. MONTGOMERY AND LOIS C. MONTGOMERY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85542.   Promulgated February 1, 1938.

*Thomas G. Haight, Esq.*, for the petitioners.
*Dean P. Kimball, Esq.*, for the respondent.

OPINION.

BLACK: At the hearing respondent conceded none of the issues raised by the pleadings and facts were proved as to all of them, but in his brief respondent concedes that petitioners are right as to two of the issues which petitioners have designated as issues (4) and (5). The facts as to these issues were stipulated and we have omitted any reference to them in our findings of fact. Effect will be given to the stipulation as to these two issues and the concessions of respondent in a recomputation under Rule 50. This leaves for our consideration issues (1), (2), and (3).

*Issue (1).*—This question is whether losses sustained by petitioner from sales of stocks held by him for less than two years may be offset against the gains of his wife from sales of similar noncapital assets in their joint return for 1933. The pertinent sections of the Revenue Act of 1932 are as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

\* \* \* \* \* \* \*

(r) LIMITATION ON STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

SEC. 51. INDIVIDUAL RETURNS.

\* \* \* \* \* \* \*

(b) HUSBAND AND WIFE.—If a husband and wife living together have an aggregate net income for the taxable year of $2,500 or over, or an aggregate gross income for such year of $5,000 or over—

(1) Each shall make such a return, or

(2) The income of each shall be included in a single joint return, in which case the tax shall be computed on the aggregate income.

During the taxable year 1933 petitioner sustained losses of $104.44 from sales of stocks of the kind defined in subsection (t) of section 23, *supra.* He had no gains from similar sales or exchanges. The stocks sold by him were not capital assets since they were held by him for less than two years. Sec. 101 (c) (8), Revenue Act of 1932. During the same year petitioner Lois C. Montgomery realized gains in excess of $104.44 from sales of similar noncapital assets. She had no losses from similar sales or exchanges.

The respondent contends that the allowance of petitioner's losses of $104.44 is forbidden by section 23 (r) (1), *supra*, since he had no gains from similar sales or exchanges. This is in accordance with his published ruling on the subject. See G. C. M. 15438, Cumulative Bulletin XIV-2, p. 156.

Petitioners contend that, since they filed a joint return in accordance with their rights under section 51 (b) (2), *supra*, the limita-

tion on stock losses prescribed in section 23 (r) (1) applies only if the combined losses of husband and wife are in excess of the combined gains. This precise question was involved in *H. Denny Pierce*, 37 B. T. A. 225, and was decided contrary to the contention made by petitioner. It is unnecessary for us to repeat here the reasons which we gave in support of that decision. For the details of our reasoning, see that report.

Following our decision in that case, we hold against petitioner on issue (1) and sustain the action of the Commissioner.

*Issue (2).*—On the joint return filed for 1933 petitioner deducted $79,061.01 as a loss on the liquidation in 1933 of the Montgomery Evergreen Nursery, Inc. The respondent disallowed the deduction on the ground that no evidence had been submitted which proved conclusively that the claimed loss resulted from a transaction entered into for profit within the meaning of section 23 (e) of the Revenue Act of 1932. Both the original and amended petitions alleged that respondent had erred in disallowing "a loss of $79,061.01, resulting from liquidation of the Montgomery Evergreen Nursery, Inc." The amended petition was later duly amended to assign as error that "The respondent erred in disallowing as a deduction from the petitioners' gross income for the taxable year 1933 a loss of $40,000 and a bad debt of $39,061.01 resulting from the liquidation of the Montgomery Evergreen Nursery, Inc." Petitioner now concedes that his proven basis of the 1,000 shares of Montgomery Evergreen Nursery, Inc., owned by him at the time of dissolution in 1933 was $38,000 rather than $40,000. This conceded basis of $38,000 is not in question. In his brief the respondent contends that the alleged loans in the form of income bonds and advances by petitioner to the corporation resulting in the alleged bad debt of $39,061.01 were in fact not loans at all, but merely additional contributions to the corporation or investments in its stock; and that petitioner is entitled to no deduction whatever on account of the dissolution of the corporation for the reason that the claimed losses did not result from transactions entered into for profit, but were transactions entered into for the purpose of creating income tax losses and to satisfy petitioner's hobby for trees.

Section 23 of the Revenue Act of 1932 provides that in computing net income there shall be allowed as deductions:

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *

    *        *        *        *        *        *        *

(j) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year * * *.

Whether petitioner's investment in the capital stock of the Montgomery Evergreen Nursery, Inc., was a transaction entered into for profit is largely a question of ultimate fact to be found from an examination and consideration of all the evidentiary facts and circumstances. *W. S. Farish*, 36 B. T. A. 1114. Both parties refer us to the case of *Commissioner* v. *Field*, 67 Fed. (2d) 876, 878, wherein the court said: "It is a matter of intention and good faith, and all the circumstances in the particular case must be our guide."

Aside from the stipulated facts the evidence offered by petitioner consisted of certain documents and the testimony of six witnesses, including petitioner. The respondent offered no evidence. The substance of the testimony of all the witnesses was that the nursery conducted by the corporation was strictly a commercial nursery, operated in an effort to make profit. It is true that the venture proved to be unprofitable, but we have no reason to disbelieve the testimony of petitioner that the bona fide purpose of petitioner in incorporating the Montgomery Evergreen Nursery was to establish an enterprise which would ultimately pay profits, especially when this testimony is reinforced by five other witnesses who testified to facts and circumstances which corroborate petitioner. We have therefore found as a fact that the organization and acquisition of the stock of the Montgomery Evergreen Nursery, Inc., was a transaction entered into for profit.

The corporation's charter, in addition to authorizing it to do a nursery business, also permitted it to purchase and sell personal property of every kind and description; to carry on any similar business or operation deemed advantageous, which is incidental or accessory to any of the powers or purposes therein specified; and generally to do anything that a natural person might lawfully do in connection therewith. It was under these broad powers that the corporation in 1930 duly issued $300,000 face value of its income bonds to petitioner for $300,000 in cash, and at about the same time purchased from petitioner stocks and securities having a cost basis to petitioner of about $500,000 for $303,585, which latter amount was the fair market value of the stocks and securities at that time. The respondent emphasizes these facts in his brief and contends that we must conclude therefrom that the primary purpose of organizing the corporation was to afford petitioner an entity to which he could, in form, transfer his depreciated stocks and securities without surrendering his economic interest in them and at the same time create for himself income tax losses of approximately $200,000 to which he would not otherwise be entitled. We do not have the question of the deductibility of these losses of approximately $200,000 in this proceeding. We express no opinion whatever as to the deductibility of such losses. Our question here is whether petitioner intended in

good faith to organize the corporation for profit and invested in its stock for that purpose. The respondent does not contend that the corporation should be disregarded and we see no reason for so doing. Nor does respondent claim that petitioner has not actually suffered the losses which he claims. At the hearing the presiding Member, at the close of petitioner's testimony, asked petitioner if one of the objects he had in organizing the corporation was to sell shares of stock to it and thereby realize a deductible loss for the year 1930, to which petitioner replied as follows:

I am trying to disconnect it from the nursery business, your Honor. I would say that was incidental because at that time as I recall it, the maximum tax rate was 25 per cent; that I was much more concerned in turning those securities in with the company, rather than sell them in the market and rebuy them, for I thought they would have an increase in value later on. When I made the sale to the corporation I have no doubt but what I did consider the question of deduction for the loss. I must have considered it. I am perfectly willing to assume that I did.

It seems reasonably clear from the testimony of petitioner just quoted and other testimony in the record that one of the purposes which the petitioner had in mind when he organized the corporation was to make sale to it of said securities, which had depreciated in value, and take the resulting loss as a deduction in his income tax return for 1930. We have therefore found as a fact that such was one of petitioner's objects in organizing the corporation. But it is equally clear that when petitioner organized the corporation and subscribed and paid for its capital stock, he intended that the corporation immediately establish a nursery to grow and sell conifers and make a profit therefrom. The corporation did establish and operate the nursery, but the expected profit never came. This is by no means an uncommon experience in the affairs of men. The casualties of business are fully as numerous as those which survive.

We therefore believe that the evidence offered by petitioner overcomes the respondent's determination that petitioner's original investment in the corporation was not a transaction entered into for profit. This investment became worthless in 1933, when the corporation liquidated and was without assets. The loss was not compensated for by insurance or otherwise. We hold, therefore, that petitioner is entitled to a deduction in 1933 of $38,000, which represents petitioner's basis of the 1,000 shares of stock of the Montgomery Evergreen Nursery, Inc.

We also think petitioner is entitled to deduct $39,061.01 as a bad debt ascertained to be worthless and charged off within the taxable year. This amount is made up of the unredeemed income bonds of the corporation in the amount of $24,000 held by petitioner after the corporation was without assets and for which petitioner had paid

the corporation $24,000 in cash, and $15,061.01 representing advances made by petitioner to the corporation which remained unpaid after the corporation dissolved and was without assets. There is no evidence that these amounts were contributions made by petitioner to the corporation, as respondent now contends, or that they represented an additional investment in the capital stock of the corporation. Even if we should sustain respondent's contention and hold that they represented the latter, they would still be deductible as a part of petitioner's basis of that stock, for the reasons already given. Only in the event that we should hold that petitioner's investment in the stock of the corporation was not a transaction entered into for profit, would it make any difference in the ultimate result. We think however that the amounts represented bona fide loans by petitioner to the corporation; that they were made for business purposes and with the expectation of being repaid; and that when the corporation was dissolved and without assets, petitioner was justified in ascertaining them to be worthless and in charging them off his books. We hold that petitioner is entitled to the deduction for bad debts ascertained to be worthless and charged off in the taxable year, which he claims.

*Issue (3).*—The third issue is whether petitioner is entitled to deduct from gross income the depreciation sustained on the Mountain Lake property during the year 1933 and the expenses paid or incurred during that year in connection with the property for maintenance and advertising.

Section 23 of the Revenue Act of 1932 provides that in computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

\* \* \* \* \* \* \*

(k) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business * * *.

Section 24 of the Revenue Act of 1932 provides that in computing net income "no deduction shall in any case be allowed in respect of" personal, living, or family expenses.

It is respondent's contention that the use of the Mountain Lake property from the time it was acquired by petitioner Lois C. Montgomery, was for residential purposes; that it had never been rented up to the close of the taxable year and therefore petitioner is not entitled to take the deductions which he claims; that the expenditures involved were personal, living, or family expenses. Respondent in support of his contention cites *Rumsey* v. *Commissioner*, 82 Fed. (2d) 158, affirming memorandum decision of the Board, and *Morgan* v. *Commissioner*, 76 Fed. (2d) 390, affirming decision of the Board.

Petitioners contend that both of these cases are distinguishable on their facts. Petitioners point out in their brief that:

\* \* \* In both of these cases, the taxpayer owned property which he had acquired for residential and personal use. Thereafter the property was offered for rent or for sale and the taxpayers contended that offering the property for rent converted a residential property to business property. The Court in each instance held that the mere offering for rent is insufficient to effect an appropriation for business use. Regardless of whether these cases are sound, it is submitted that they have no application in the instant case. The petitioner, Robert H. Montgomery, had never owned the property in question as a *residence*, and therefore there is no question of converting it to a business one. When said petitioner acquired the property, he had no intention whatsoever of thereafter using it for personal or residential purposes. He acquired it for the sole purpose of either selling it for the best possible price or renting it. In the *Morgan* case the Court based its decision on the fact that there had been no "transaction" appropriating the property for business use. In the instant case, there was such a transaction, *i. e.*, the acquisition of the property by the petitioner.

Petitioners further contend that this issue is controlled by our decision in *Estate of Ellen C. Bonaparte*, 1 B. T. A. 1101. In that case the taxpayer acquired from the estate of her deceased husband certain property which had been used by the husband and his family as a residential property. She received the property free and clear and could do with it as she wished. A few weeks after receiving the property she offered it for sale and also for rent. After approximately one year and a half, during which time no one had been willing to rent the property and there had been no offer to buy at the appraised valuation, the taxpayer sold the property at a loss and claimed the loss on her income tax return. The Board held for the taxpayer, saying:

The record clearly shows that the taxpayer, from the time she received this property, planned to rent it, and planned to sell it, in order to produce gains if possible, and finally did dispose of it, receiving about $41,000 therefor. The record convinces us that the transaction described was in every respect a transaction entered into for profit and that it comes clearly within the meaning of provisions of law, and that the immediate loss arising out of this transaction is such a loss as the law contemplated should be deducted from a gross income during the year in which it was sustained.

It should be pointed out however that the question involved in the *Bonaparte* case was the deductibility of a loss on a sale of property once used for residential purposes and the decision of that issue depended upon whether or not the transaction was entered into for profit. We held, under the facts, that it was. Here the issue is not one of the deductibility of a loss incurred in a sale of property acquired in a transaction entered into for profit, but whether or not the depreciation which was incurred in the taxable year was depreciation of property used in petitioner's trade or business and whether or not the expenses incurred in the care and maintenance of the property and advertising it for rent or for sale were ordinary and

necessary expenses paid or incurred during the taxable year in carrying on any trade or business. If petitioner had proved he had actually rented the premises during 1933, perhaps he would be entitled to a part or all of the deductions which he claims. Thus the Treasury has held that a taxpayer is entitled to deduct a proportionate part of the depreciation if he rents a portion of his personal residence to other individuals, Bureau Bulletin "F", January 1931, and that a proportionate part of the depreciation must be taken into consideration when a taxpayer owning a two-family house occupies one floor as his residence and rents the other. O. D. 1026, 5 C. B. 51. But in the instant case the petitioner did not rent the property during the taxable year. He only tried, without success, to rent or sell it.

In the *Rumsey* case the court said:

> If an owner rents, his decision is irrevocable, at least for the term of the lease; and if he remodels to fit the building for business purposes, he has likewise made it impossible to resume residential uses by a mere change of mind. When, however, he only instructs an agent to sell or rent the property, its change of character remains subject to his unfettered will; he may revoke the agency at any moment.

We do not think that it can be said under these circumstances that the depreciation which the petitioner suffered on the property in question was incurred with reference to property used in his trade or business nor do we think that the expenses of maintenance of the property and the expenses of advertising it for rent or sale can be said to be "ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business." We think these expenses, under the facts shown, must be held to be personal, living, or family expenses and are not deductible.

On issue (3) we sustain respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*