D. Joseph St. Germain and Dorothy H. St. Germain, Husband and Wife v. Commissioner.
St. Germain v. Commissioner
Docket No. 57623.
United States Tax Court
T.C. Memo 1959-73; 1959 Tax Ct. Memo LEXIS 175; 18 T.C.M. (CCH) 355; T.C.M. (RIA) 59073; April 17, 1959
James A. Reed, Esq., for the petitioners. Chester M. Howe, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies of $1,717.08 in income tax and of $735.51 in additions to tax under *176 section 294(d)(1)(A), I.R.C. 1939, for 1951. By amended answer respondent claimed a deficiency of $490.34 in addition to tax under section 294(d)(2), I.R.C. 1939, for the same year. The issues are (1) whether petitioners operated a farm as a trade or business in 1951 within the meaning of sections 23(a)(1), 23(e)(1), and 23(1), I.R.C. 1939; (2) whether petitioners' failure to file a return of estimated tax for 1951 was due to reasonable cause and not to willful neglect; and (3) whether an addition to tax is imposed by section 294(d)(2), I.R.C. 1939, when no estimated tax return is filed. Findings of Fact The stipulated facts are found. D. Joseph St. Germain, hereafter called petitioner, and Dorothy H. St. Germain, husband and wife, resided in Springfield, Massachusetts, and filed a joint return for the year 1951 with the collector of internal revenue for the district of Massachusetts in accordance with the cash method of accounting. Since 1924, petitioner has been an investment broker specializing in insurance and bank stocks. His income from this occupation for the years 1948 through 1951 was $27,212.85, $13,816.07, $25,747.58 and $29,555.52, respectively. Petitioner's *177 1951 joint income tax return showed a tax due of $6,536.18, including $81 self-employment tax, all of which was paid on March 17, 1952. Petitioner did not file a declaration of estimated tax for 1951. For 1936 and all subsequent years, including 1951, petitioner's Federal tax returns were prepared by Scovell, Wellington & Company under the personal supervision of William W. Johnston, a certified public accountant and a partner of that firm. Johnston is enrolled as an agent entitled to practice before the Treasury Department and has devoted the major portion of his time for over 30 years to Federal tax matters. In 1951 he was head of the tax department of the Springfield office of his firm. For each of the years 1943 through 1950, petitioner filed timely income tax and estimated tax returns, forms 1040 and 1040-ES. Scovell, Wellington & Company prepared and sent both forms to petitioner in the same envelope for all years since 1944 when separate transmittals were made. Petitioner signed all the returns himself and sent them to the proper official. He made out the checks for payment and obtained his wife's signature for joint returns. Scovell, Wellington & Company failed, through *178 no fault of petitioner, to send a completed form 1040-ES to petitioner for the year 1951. Petitioner's failure to file a declaration of estimated tax for 1951 was not due to reasonable cause. In 1936 petitioner purchased approximately 170 acres of land in Hampden and Monson, Massachusetts, hereafter called the farm. For several years prior to 1948 he conducted cattle operations on the farm which resulted in continuous losses. These operations were discontinued by 1948 when petitioner concluded that the best use for his farm was to grow trees. Prior to this time petitioner had planted nearly 50,000 trees. He acquired additional acreage and by 1951 his farm consisted of a total of approximately 700 acres in Hampden and Monson, Massachusetts, and in Stafford, Connecticut. By this time he had planted approximately 60,000 trees, and in 1951 he planted 10,000 more. He also cleared land, constructed access roads and prepared fire lanes in that year. He employed a few people, mostly for tree planting which was done at the proper season on weekends. He spent all of his free time on the farm. The main house on the farm was located in the vicinity of Spring Lake. Much of the planting done *179 by 1951 was in this general area. On June 30, 1951, petitioner sold his farm at a small loss to the Springfield Mortgage Corporation, about 80 per cent of whose stock was owned by petitioner. Petitioner wanted to segregate his real estate holding from his brokerage business. Petitioner's mother lived on the farm from 1940 until it was sold, and his son lived on it from 1940 through 1947. During 1951, the farm was available to petitioner's children and grandchildren for recreational purposes. The production of commercial saw logs requires 35 to 50 years. Petitioner expected to earn a net profit of $1 per mature tree after deducting expenses which he estimated at $3 per tree. In addition, there was the possibility that petitioner could realize a profit on the sale of immature trees for pulp or poles, depending on the current market. Petitioner made no sales of trees in 1951. Petitioner did not expect to realize a profit from the forestry operation in 1951. The American Forest Products Industries, Inc., is an organization devoted to education and public relations in forestry and the forest industry. It is responsible for promoting a "Tree Farm" program, which involves the dedication *180 of land by private owners to the raising and harvesting of continuous forest crops. It designates certain timberlands as "Tree Farms" if after at least 5 years of operations certain standards of performance are met. The owner is required to raise successive crops and to protect his area from fire, insects and disease. The timberland owned by petitioner in 1951 was designated as a "Tree Farm" in December 1957. A forestry program results in soil conservation, watershed protection, preservation of a home for wildlife and fish and recreation for the owner. The total income and expenses claimed on schedule 1040-F by petitioner for 1948 through 1951 were: 1948
1949
1950
1951
Income: Pasture rent
$ 400.00
$ 600.00
$ 500.00
$ 250.00
Miscellaneous
4.65
Expenses: Labor
1,835.56
1,787.61
3,215.00
897.03
Feed
193.10
57.20
343.51
Seeds, plants, and trees
26.92
3.15
Supplies
1,149.44
1,523.63
1,289.13
696.28
Repairs
210.69
733.41
1,315.57
135.72
Fertilizers & lime
195.00
12.90
Gasoline & other fuel
245.35
218.76
628.72
Taxes
558.89
513.10
606.66
Insurance
567.01
182.70
390.00
Water, elec., tel.
227.56
235.43
244.55
Rent
12.50
25.00
49.50
147.50
Cold storage
40.00
10.00
Misc. exp.
84.79
75.35
8.00
Blacksmith
18.00
Farm periodicals
12.00
Depreciation
1,817.07
1,502.51
1,548.42
1,345.99
Veterinary
50.00
Legal expense
15.00
Survey
200.00
*181 It is stipulated that petitioner sustained the following net losses from agricultural operations on his property: 1944, $2,955.07; 1945, $6,331.37; 1946, $5,720.72; 1947, $3,161.29; 1948, $6,518.53; 1949, $6,319.79; and for the period January 1 through June 30, 1951, $4,012.14. For the year 1950, petitioner's expenses from agricultural operations exceeded his income from that source by $8,596.10. Petitioner was born on a farm in New York where he grew up with a love of the land, which remained with him in his adult life. Petitioner operated the farm as a business for profit during the taxable year 1951. Opinion Respondent might have taken the position here that a large part, if not all, of the deductions claimed by petitioner should be classed as capital items which he should not have the option to expense. It is easy to say that a timber operation resulting as it will in capital gain, section 631, I.R.C. 1954; section 117(k), I.R.C. 1939, recoverable only after a long period of time, [1] should be considered as involving large proportions of investments of capital. See, e.g., Rev. Rul. 55-252, 1955-1 C.B. 319. [2]
*182 In this case, however, respondent has stipulated that all of the items listed were actual expenditures of petitioner; this conveys to us the meaning that the disbursements listed were properly treated as chargeable to current expense, leaving open only the question whether they are deductible because incurred in a trade or business. [3]
On this narrow question we are required to sustain petitioner. It certainly cannot be said that the raising and ultimate cutting and marketing of timber is not a recognized commercial business. See Robert H. Montgomery, 37 B.T.A. 232, 240. Petitioner's evidence which was uncontradicted, indicates that after enough time has elapsed a return, although small, can be expected on the investment. Petitioner, himself, did not live on the property. On this record we think petitioner has carried his burden of showing that the *183 primary purpose of the expenditures in question was the conduct of business and not merely his personal enjoyment. As to whether petitioner's failure to file a declaration of estimated tax for the year 1951 was due to reasonable cause, we cannot distinguish this case from Coates v. Commissioner, (C.A. 8) 234 Fed. (2d) 459, affirming T.C. Memo. 1955-280 [14 TCM 1091,]. While it is true that each such case is to be decided on its own facts, the objective of treating all taxpayers alike under comparable circumstances, where those facts are as similar as they are here, requires that we sustain respondent on this issue. And we need not say that petitioner was guilty of willful neglect in order to subject him to the addition to tax. The absence of reasonable cause is sufficient. Finally, petitioner's contention that additions to tax under section 294(d)(1)(A) and (d)(2) cannot both be imposed must be overruled on authority of Hansen v. Commissioner, (C.A. 9) 258 Fed. (2d) 585, affirming on this issue T.C. Memo. 1957-113 [16 TCM 471,], certiorari granted sub nom. Commissioner v. Hansen, 358 U.S. 879. But cf. Acker v. Commissioner, (C.A. 6) 258 Fed. (2d) 568, *184 reversing on this issue T.C. Memo. 1957-17 [16 TCM 89,], certiorari granted sub nom. Commissioner v. Acker, 358 U.S. 940; but see Delsanter v. Commissioner, (C.A. 6) - Fed. (2d) - (Mar. 4, 1959), affirming 28 T.C. 845. Decision will be entered under Rule 50. Footnotes
1. Petitioner testified that the production of commercial saw logs requires 35 to 50 years. ↩
2. "Generally, direct costs incurred in connection with reforestation by planting are capital expenditures, recoverable through depletion as the timber subsequently becomes merchantable and is cut or sold. Compare Mim. 6030, C.B. 1946-2, 45; G.C.M. 6544, C.B. VIII-2, 118 (1929). Such planting costs include: "(a) preparation of the site, including any girdling or brush removal work to afford good growing conditions; "(b) cost of seedlings; and "(c) labor and tool expense, including depreciation of equipment used in planting such as trucks, tree planters, etc."↩
3. "THE COURT: * * * what I want to be sure of is that counsel have agreed that these amounts were expended, that the character of the expenditures was such that they would be deductible as business expenses if it is found that this was conducted as a business. "MR. HOWE: [Respondent's Counsel] That is right."↩