HOUSTON NATURAL GAS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74136.  Promulgated March 27, 1936.

*Ira F. Kennerly, Esq.,* for the petitioner.
*Dean P. Kimball, Esq.,* and *Curtis Risley, Esq.,* for the respondent.

OPINION.

SEAWELL: The respondent questions the deductibility of the amounts in question as ordinary and necessary business expenses on the ground that the expenditures were made in the acquisition of a capital asset. He regards the proceedings as being analogous to the creation or enlargement of the circulation structure of a newspaper or magazine.

No authority need be cited for the long established rule that expenditures made for benefits which are to be enjoyed for a period extending beyond the year in which they are made should be capitalized and, if of an exhaustible nature, exhausted ratably over the useful life of the asset, and may not be deducted from income as ordinary and necessary business expenses.

Expenditures made to maintain the circulation structure of a newspaper or magazine are ordinary and necessary business expenses, but those made for the primary purpose of increasing it are not. *Gardner Printing Co.*, 4 B. T. A. 37; *Public Opinion Publishing Co.*, 6 B. T. A. 1255; affd., 76 Fed. (2d) 494; *News Publishing Co.*, 6 B. T. A. 1257; affirmed on this point, 29 Fed. (2d) 955; *Successful Farming Publishing Co.*, 23 B. T. A. 150; affd., 64 Fed. (2d) 890; certiorari denied, 290 U. S. 646. The principal of these cases applies equally to other lines of business. In *Goodell-Pratt Co.*, 3 B. T. A. 30, the cost of developing a foreign market for mechanics' tools, charged to expense when incurred, was restored to surplus and included in invested capital. The cost of increasing an insurance policy list was held in *Commercial National Insurance Co.*, 12 B. T. A. 655, to be a capital expenditure. Amounts expended for novelty banks distributed, among other things, to obtain new depositors were disallowed as a business expense in *Liberty Insurance Bank*, 14 B. T. A. 1428 (reversed on

other issues, 59 Fed. (2d) 320), on the ground that the expenditures created benefits extending into future years. In *Dime Bank of Lansford, Pa.*, 20 B. T. A. 250, sums paid to an individual to persuade depositors to transfer their accounts and to solicit new ones were held to be capital expenditures. In *Northwestern Yeast Co.*, 5 B. T. A. 232, sums were expended for agents' salaries, advertising, samples, etc., in connection with a campaign conducted in new sales territory. In holding that some part of the expenditures resulted in the acquisition of a capital asset, it was said:

> There can be little doubt in the minds of reasonable men fairly acquainted with modern business that promotion expenditures like those before us have a significance similar to the investment in more tangible assets. They fertilize the field for new production. The free distribution of samples at the state fair is justified only if it lures a new customer. It was not to the housewife already convinced that the petitioner planned to give away its samples of yeast year after year, but to one who would become a new unit in its expanding business. In this way it was risking new capital in the business in the hope of future profits—making an investment. Whether this investment is to be called good will or trade name or trademark, or something else, is unimportant. It may not need a name, except for accounting purposes, in order to reflect the expenditure and yet not ignore its investment significance.

*Colonial Ice Cream Co.*, 7 B. T. A. 154, is to the same effect.

The petitioner contends that the cases cited are not controlling. on the ground that it had passed out of its organization or promotion stage prior to the taxable year and that the expenses of the solicitors and the cost of laying the service lines were outlays made to protect and maintain an established business. The rule governing the question before us makes no such distinction.

In *Northwestern Yeast Co., supra*, the expenditures were made over a period of 15 years after the corporation was organized, and under the sales promotion plan new territory was canvassed each year. The expenditures involved in *Liberty Insurance Bank, supra*, were made at least five years after the institution came into existence. In other cases the expenses were incurred long after the taxpayers were organized. *News Publishing Co., supra; Commercial National Insurance Co., supra; Public Opinion Publishing Co., supra.*

In order to hold that the whole of the amounts involved was expended by the Gas Co. for the sole purpose of maintaining its list of customers and that the increase in business was only incidental to the activities carried on, we would have to disregard evidence clearly establishing the contrary.

As early as 1928 it had applications for gas service from residents of Houston, but until May 1929 it was not in a position to supply such demand. The increase of customers in 1929 was about 600 percent and in 1930 the number of its consumers increased about

60 percent. This additional volume of trade represents new business in territory just entered and resulted, in part, from the efforts of the soliciting agents and the laying of service lines for consumers free of charge in a campaign for new consumers inaugurated in 1929.

The record abounds with testimony relating to the keenness of the competition between the gas companies in 1929 and 1930, including extreme methods used by the Fuel Co. in an effort to prevent the Gas Co. from establishing a profitable business in territory in which it had for many years enjoyed a monopoly. The success of the Gas Co. in Houston depended not only upon its ability to retain what it had in the way of customers, but to obtain new business. The countervailing tactics employed by it were designed to and did accomplish both purposes. The new business may not be regarded as an incidental result of the expenditures.

The Gas Co. made no allocation of the expenditures on its books between the acquisition of new business and the maintenance of old consumers and there is no testimony in the record on the point. Without means of determining to what extent the total expenditures are properly chargeable against current income, we are obliged to and do sustain the action of the respondent in disallowing the whole amount as an ordinary and necessary business expense.

*Decision will be entered for the respondent.*