HALES-MULLALY, INC., A CORPORATION, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100853. Promulgated January 6, 1942.

26

*Charles H. Garnett, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

MELLOTT: The applicable statute is section 23 (a) of the Revenue Act of 1936.[1] Respondent also cites section 24 (a) (2) of the same act and the corresponding article of Regulations 94.[2]

The facts are not seriously in dispute. The findings show the circumstances under which the payments were made. Respondent determined that they were not ordinary and necessary expenses of carrying on petitioner's business. He does not seriously contend they were not necessary, directing his argument upon brief chiefly

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

ART. 24—2. Capital expenditures.—*　*　*

　　*　　　　*　　　　*　　　　*　　　　·

The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense.　*　*　*

　　*　　*　　*　　　*　　　　*　　　　*　　　　*　　　　*

to the question whether they were ordinary. Without abandoning the theory upon which he disallowed the deduction, he advances an alternative one—that the payments were in the nature of capital expenditures.

The decided cases establish certain general principles: Expenses incurred in connection with a suit or action against a taxpayer directly connected with or approximately resulting from his business, whether to secure payment of the earnings of the business or to retain them after receipt, are deductible as ordinary and necessary business expenses. *Kornhauser* v. *United States*, 276 U. S. 145. Expenses incurred in the settlement of a criminal liability or to avoid criminal prosecution, are not deductible, *B. E. Levinstein*, 19 B. T. A. 99; *Sanitary Earthenware Specialty Co.*, 19 B. T. A. 641; *Estate of John W. Thompson*, 21 B. T. A. 568; *Burroughs Building Material Co.* v. *Commissioner*, 47 Fed. (2d) 178; nor are those paid in connection with lobbying or propaganda, *Textile Mills Securities Corporation* v. *Commissioner*, 314 U. S. 326; those which are "beyond the norm of general and accepted business practice" and "so extraordinary as to occur in the lives of ordinary business men not at all", *Deputy* v. *du Pont*, 308 U. S. 488; capital expenditures, including those made in defending or perfecting title to property, *Aluminum Products Co.*, 24 B. T. A. 420; *Morgan Jones, Estate*, 43 B. T. A. 691 (on appeal, C. C. A., 5th Cir.); amounts paid by a corporation in settlement of a suit brought against its officers on account of their alleged wrongdoing, *Blackwell Oil & Gas Co.* v. *Commissioner*, 60 Fed. (2d) 257; or payments which are made to discharge the liabilities of others, even though they are made for the purpose of insuring future profits, *Welch* v. *Helvering*, 290 U. S. 111; *A. Giurlani & Bros.* v. *Commissioner*, 119 Fed. (2d) 852, affirming 41 B. T. A. 403. Expenditures made in securing an acquittal on a criminal charge, *Commissioner* v. *Peoples-Pittsburgh Trust Co.*, 60 Fed. (2d) 187, affirming 21 B. T. A. 588; in successfully defending against a complaint before the Federal Trade Commission, *Continental Screen Co.*, 19 B. T. A. 1095; affd., 58 Fed. (2d) 625; to compromise a tax or abate a proposed penalty, *H. E. Bullock*, 16 B. T. A. 451; in prosecuting a claim for refund of taxes, *Florence Grandin*, 16 B. T. A. 515; to settle a dispute arising from "business dealings between the parties", *H. M. Howard*, 22 B. T. A. 375; in compromise of a civil suit for damages even though the suit was also against others, *International Shoe Co.*, 38 B. T. A. 81; in resisting an assessment for widening a street or an illegal attempt by a city to condemn property, *Commissioner* v. *Chicago Dock Canal Co.*, 84 Fed. (2d) 288; *L. B. Reakirt*, 29 B. T. A. 1296; affd., 84 Fed. (2d) 996; in defending against litigation which was an outgrowth of a taxpayer's connection with the business of a corporation, *Foss* v. *Commissioner*, 75 Fed.

(2d) 326; to recover, in a proceeding before the Mixed Claims Commission, balances in the taxpayer's accounts with German banks, *Commissioner* v. *Speyer*, 77 Fed. (2d) 824; and in making restitution for a wrong committed in a business transaction, *Helvering* v. *Hampton*, 79 Fed. (2d) 358; *W. R. Hervey*, 25 B. T. A. 1282, have been held to be ordinary and necessary business expenses paid or incurred in carrying on a trade or business.

The cited cases are but a few of the legion in which the courts or this Board have been called upon to determine the difficult and vexing question. Collectively, they "fail to provide 'any verbal formula that will supply a ready touchstone'. *Welch* v. *Helvering* * * *." *A. Giurlani & Bros.* v. *Commissioner*, *supra*. "To attempt to harmonize [the cases] would be a futile task. They involve the application of particular situations, at times with borderline conclusions." *Welch* v. *Helvering*, *supra*. "Review of the many decided cases is of little aid since each turns on its own special facts." *Deputy* v. *du Pont*, *supra*. "The words 'ordinary and necessary' are not so clear and unambiguous in their meaning and application as to leave no room for an interpretative regulation." *Textile Mills Security Corporation* v. *Commissioner*, *supra*. No interpretative regulation, other than article 24–2 is cited and, while it has some pertinency, the question whether the expenditures were ordinary is primarily a question of fact. The facts will be briefly summarized.

In 1934 a number of the officers and employees of Harbour-Longmire Co., including W. T. Hales, its president, became dissatisfied with the way the business was being conducted. Those who were stockholders sold their stock to the company in May or June of 1935. In August of that year they left the company with the idea of forming a corporation to engage in business in competition with Harbour-Longmire Co. The necessary funds were to be advanced by W. T. Hales, who was possessed of considerable means. By letter dated September 5 or 6, 1935, Harbour-Longmire Co. agreed to sell its wholesale division, good will and certain franchises to George A. Hales and Mullaly, son and son-in-law, respectively, of W. T. Hales. In pursuance of this agreement a contract of sale was entered into by the parties on September 12, 1935. Between those dates petitioner was organized and on October 12, 1935, Hales and Mullaly executed an assignment to petitioner as set out in our findings, drawing its checks payable to the order of Harbour-Longmire Co. in payment for the properties.

On December 16, 1935, five salesmen formerly in the employ of Harbour-Longmire Co. but then in petitioner's employ, filed suits against Harbour-Longmire Co. for commissions. It countered by filing a suit against W. T. Hales, his son, son-in-law, McBrayer, the five salesmen, and petitioner, charging that the individual defendants

had conspired to ruin its business and, through fraudulent means, had acquired its wholesale department, good will and franchises. It alleged that because of the false and fraudulent representations of the individuals it had been forced to enter into a contract for the sale of its properties in order to avoid further losses, all to its damage in a sum, including exemplary damages, totaling $1,096,739.53. The sole allegation of the petition pertaining to petitioner herein is in paragraph 37,[3] which recites that petitioner was organized for the purpose of taking over the property and that it acquired it merely as an instrument or means designed by the individual defendants to operate and hold it. W. T. Hales was the only defendant in a position to respond in damages.

The genesis of the litigation was schism or dissension between two groups of stockholders of Harbour-Longmire Co. and the major portion, if not all, of the acts relied upon in the petition for damages took place prior to the organization of petitioner. All of the suits were settled by petitioner paying the five salesmen 60 percent of the amounts which they were claiming as commissions due from Harbour-Longmire Co. and petitioner paid what appears to be, so far as this record shows, the total attorney fees and costs in connection with the conspiracy action.

Petitioner insists that the kind of action it is required to defend is immaterial unless the transaction out of which it arose is of a class in which deductions may not be allowed as a matter of public policy (e. g., crimes, lobbying, and propaganda) ; that it makes no difference whether it participated in the conspiracy or, if it did participate, whether its action was, or was not, in the ordinary course of its business; that the extent of petitioner's culpability, liability, or unethical and unmoral conduct may not be inquired into in this collateral proceeding; that the petition stated a cause of action against it for more than a million dollars and its officers deemed it wise to settle it rather than hazard a trial; that "lawsuits are of common or frequent occurrence in the type of business in which the taxpayer was engaged"; that the expenditures in question were ordinary in the sense that they were normal and usual; and that the respondent erred in denying the claimed deduction. Its contentions are more or less summarized in its reply brief in the following sentence:

The question here is whether, when a merchandising business corporation is sued for damages on account of any kind of a transaction, it is the ordinary and

---

[3] That Hales-Mullaly, Inc. is an Oklahoma Corporation organized by the defendants W. T. Hales, Carter Mullaly, J. R. McBrayer, George A. Hales and one W. T. Hales, Jr., for the purpose of taking over the franchises and plaintiff's wholesale business when the same should be procured by the defendants pursuant to said conspiracy; that said corporation did acquire and take over and now owns and operates all of the same, and was, and is, merely an instrument and means designed by the defendants to operate the said wholesale business and hold the franchises, good-will and merchandise, the incorporators. directors and officers of said corporation and the persons having the management and control thereof being the defendants and conspirators, W. T. Hales, Carter Mullaly, J. R. McBrayer and George A. Hales.

necessary thing to defend against such lawsuit and to incur expense for attorney's fees in such defense, and, if its directors and officers in good faith believe it for the best interest of the corporation to settle such lawsuit, even though it be regarded as having only a nuisance value, such attorney's fees and the settlement sum are ordinary and necessary expenses of such corporation's business.

It is unnecessary to pass upon each of petitioner's contentions. Suffice it to point out "the fact an obligation to pay has arisen is not sufficient." *Deputy* v. *duPont, supra*. The transaction which gives rise to it must be of common or frequent occurrence in the type of business involved, *Welch* v. *Helvering, supra*—"normal, usual or customary"—"and its normalcy in the particular business" is "crucial and controlling." *Deputy* v. *du Pont, supra*. If petitioner had been sued upon an account, or for damages sustained through the negligent operation of one of its delivery trucks, for example, there would be but slight question of normalcy; but it is far from "normal, usual or customary" for a mercantile corporation to be sued for acts committed by its incorporators prior to its organization. Moreover, we think it is also material, and incumbent upon petitioner to show, that the suit resulted, at least in part, from some action of the corporation either in, or incidental to, its ordinary business. Cf. *Wolf Manufacturing Co.*, 10 B. T. A. 1161; *W. S. Dickason*, 20 B. T. A. 496. No such showing, however, has been made. Petitioner's contention that expenditures made by a mercantile business in defending a suit for damages on account of *any* kind of a transaction is clearly contrary to the decisions, especially *Deputy* v. *du Pont*. This case is controlling and, since, in our judgment, petitioner has failed to prove that the expenditures were "ordinary", respondent's determination must be upheld.

While decision may be rested wholly upon the ground set out above, it is not amiss to refer to the fact that the record does not disclose why all of the expenses were borne by petitioner while the gravamen of the action was an unlawful conspiracy by the individual defendants. This Board has allowed the deduction by a corporation of its share of the legal expenses where it was a codefendant with some of its stockholders, *Matson Navigation Co.*, 24 B. T. A. 14, and has allowed the deduction of the amount paid in settlement by a corporation which had been charged as a coconspirator with its officers in a transaction arising out of and in connection with its business subsequent to its organization. *International Shoe Co., supra*. No case has been cited, and we know of none, in which deduction has been allowed for the full amount of a fee paid by one defendant for the benefit of several, and the general rule, certainly in the absence of an agreement to the contrary, would seem to be that deduction should be allowed only for an aliquot portion of the total fee. Cf. *Blackwell Oil & Gas Co., supra; Walter S. Dickey,*

14 B. T. A. 1295; affirmed on another issue, 56 Fed. (2d) 917; certiorari denied, 287 U. S. 606.

Respondent's alternative contention, though not indicated in his original determination, is properly before us (*Standard Oil Co.*, 43 B. T. A. 973 (on appeal, C. C. A., 7th Cir.), and cases cited) and, if necessary, could be considered. Briefly it is, that the expenditures were made in connection with the acquisition of the property, franchises, and good will of Harbour-Longmire Co. and represented a capital investment. Sec. 24 (a) (2) and art. 24-2, Regulations 94, *supra*. This contention seems to be sound; but in view of the conclusion reached upon the main issue it may be passed without decision or further discussion.

The parties cite and discuss at considerable length an opinion by the Supreme Court of Oklahoma, *Hales-Mullaly, Inc.* v. *Oklahoma Tax Commission*, 100 Pac. (2d) 274, handed down January 23, 1940, and involving the identical expenditures in controversy here. The majority of the court held that the expenditures were ordinary and necessary expenses of carrying on the taxpayer's business, under a state statute almost identical with section 23 (a) of the revenue act, *supra*. Neither party contends that the cited case is binding upon us, though of course it is entitled to considerable weight because of the high standing of the court. The fact that the decision was not unanimous and that we find ourselves more nearly in accord with the views expressed by the dissenting judges, indicates that the question is not an easy one to answer. As Mr. Justice Cardozo remarked, in *Welch* v. *Helvering, supra*: "The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle."

*Decision will be entered for the respondent.*