Fred G. Richardson v. Commissioner.
Richardson v. Commissioner
Docket No. 108228.
United States Tax Court
1943 Tax Ct. Memo LEXIS 503; 1 T.C.M. (CCH) 440; T.C.M. (RIA) 43030; January 19, 1943
*503 John C. Evans, Esq., George L. Cassidy, Esq., and H. S. Derderian, Esq., 810 Ford Bldg., Detroit, Mich., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This proceeding involves deficiencies in income tax for the years 1938 and 1939 in the respective amounts of $3,730.99 and $1,608. Many of the basic facts are stipulated and are found accordingly. Some of the adjustments made by the respondent are not contested. Others, though placed in issue by the pleadings, have been abandoned by petitioner. Respondent upon brief, with commendable frankness, concedes that petitioner has sustained his burden of proof as to some of the items in controversy. We therefore set out at this juncture a schedule reflecting some of the concessions and indicating most of the issues to be decided. Deductions Claimed
1938
In Issue
Conceded By
Under the
Respondent
Description
Pleadings
On Brief
Office and General Expenses other
than as listed below
$4,710.24
$4,710.24
Long Distance Phone Calls
471.80
Gas, Oil and Entertainment expense
reimbursed to Salesman Charles
Kuess
$ 353.87
Office Supplies
Auto Expenses
808.18
Rent and Office Expenses
120.00
$ 120.00
Salesmen Expenses
Traveling Expenses
Legal and Professional Services
Gifts and Entertainment
7,961.83
$14,425.92
$4,830.24
*504 Deductions Claimed
1939
In Issue
Conceded By
Under the
Respondent
Description
Pleadings
On Brief
Office and General Expenses other than as listed below
$4,892.02
$4,892.02
Long Distance Phone Calls
421.34
Gas, Oil and Entertainment expense reimbursed to Salesman Charles Kuess
$ 536.11
Office Supplies
182.60
$182.60
Auto Expenses 818.45
Rent and Office Expenses
235.79
527.50
Salesmen Expenses
79.79
Traveling Expenses
139.32
Legal and Professional Services
557.50
Gifts and Entertainment
9,205.82
$17.068.74
$5,602.12
The principal question involves the deduction of amounts alleged to have been expended for "Gifts and Entertainment." The deductibility of the other amounts depends largely upon whether the proof is sufficient to authorize their allowance. Another issue is whether petitioner is entitled to a bad debt deduction in connection with funds advanced to a corporation, a substantial portion of the stock of which was owned by him. General Findings of Fact Petitioner is an individual residing in Detroit, Michigan. His returns, on the cash basis, were filed with the collector of internal revenue for the district of Michigan. *505 On January 17, 1929, F. L. McLaughlin Co. (hereinafter referred to as the corporation) was organized under the laws of Michigan. Petitioner and McLaughlin owned all of its 500 shares, each owning 250. The articles recite that the purposes for which it was formed were: To manufacture, sell and acquire and otherwise dispose of automotive materials, parts and accessories; to acquire, sell, assign, mortgage and lease real estate in the furtherance of its business. The corporation maintained an office for the conduct of its business at 525 New Center Building during the entire year 1938 and until its dissolution in June of 1939. It carried on its business as a dealer in automotive materials, selling principally to Briggs Manufacturing Co., Fisher Body and Chrysler Corporation. Its gross sales for the two years were $850,211.78. The corporation purchased most of its products from National Stampint Co. and Mt. Clemens Metal Products Co. Petitioner was its president and during the taxable years had a private office in the corporation's offices located at 525 New Center Building in Detroit until the corporation was dissolved. He also and during the same period, acted in his personal capacity *506 as a manufacturer's agent and maintained an office at 541 New Center Building. In the latter capacity he received commissions as follows: 1938
1939
Detroit Gasket & Mfg.
Co.
$2,575.01
$ 3,141.29
Elco Tool & Screw Corp.
4,427.81
4,419.72
Mt. Clemens Metal
Products Co.
30,086.61
During the taxable years petitioner, in his individual capacity as a manufacturer's representative for the companies named in the preceding paragraph, sold principally to Fisher Body, Chrysler Corporation, Briggs Manufacturing Co. and Ford Motor Co. gross merchandise of the approximate value of $140,056.40 in 1938 and $614,746.99 in 1939. On June 11, 1936, the board of directors of the F. L. McLaughlin Co. adopted a resolution reciting, inter alia, that, because of the nature of the business conducted by it, capital was "not a material factor toward gross income, same being derived principally from the efforts of the president and treasurer." It was therefore resolved that each of them (petitioner and McLaughlin) should "receive compensation in equal amounts based upon the funds available beyond the needs of the corporation. * * * Said compensation to be paid monthly." It was further *507 resolved: "That the corporation shall reimburse the officers for traveling and entertainment expenditures made by them in connection with their duties for the corporation. No detail accounting of these expenditures by the officers to the corporation is necessary, provided the amount spent by either officer is not in excess of $2,400 per year." This resolution was never formally changed by the board of directors but petitioner and McLaughlin, during 1937, agreed that each should thereafter pay his own expenses for entertainment. An estrangement occurred between petitioner and McLaughlin at some undisclosed time. Neither the records nor the returns of the corporation are in evidence. Petitioner's return for 1938 showed salary of $27,067.88 received from F. L. McLaughlin Co. His return for 1939 showed salary of $26,406.61. The Commissioner determined that $7,311.51 of the latter amount represented distributions in complete liquidation of the company rather than salary and that by reason thereof petitioner sustained a long-term capital loss of $5,664.08. This adjustment is not contested. Issue I. - Gifts and Entertainment Findings of Fact Petitioner has been a manufacturer's *508 agent for the past 15 or 16 years. Most of his sales were made through purchasing agents, engineers and representatives of the larger automotive companies. It is a practice among manufacturer's agents to entertain the representatives of the companies with which they expect to transact business, including their wives and members of their families. The entertainment furnished by petitioner during the taxable years was quite lavish and included parties and dinners at his home, at his summer home, at clubs and hotels, barbecues, displays of fireworks, fishing parties, hockey, racing, football and baseball games, theater parties, etc. The parties were frequently attended by from ten to fourteen couples and included, in addition to engineers and buyers, "follow up men, contact men and so forth" of the companies with which he was transacting business. None of their names were furnished but all worked in some capacity for the larger automotive companies. In connection with the various types of entertainment considerable quantities of liquor, furnished by petitioner, were consumed. Petitioner also frequently purchased gifts for his guests, including fishing licenses, paintings, books, corsages *509 for the ladies, mixers, etc. The record does not disclose the precise amount expended for the various types of entertainment and gifts. Petitioner followed the practice of drawing checks payable to cash and noting on his check stub the purpose for which the amount was to be expended. After cashing the checks the money was placed in a wallet out of which entertainment expenses were paid. Approximately 100 checks were drawn in each of the taxable years, aggregating the amounts presently in issue - $7,961.83 for 1938 and $9,205.82 for 1939. A partial list of the checks, with the notations appearing on each, is set out in the following schedule: 1938
Item
Date
Amount
Explanation
18
Feb. 7
$200.10
Entertaining Chrysler Jan. 29 $86.50; Briggs Purchasing 5th & 6th
$113.60
29
Apr. 25
204.80
Fisher - Studio Club 4/22 $86.20; Chrysler - Northwood 4/23 $118.60
35
May 13
137.00
Gifts to trade - 4 waring mixers at $34.25
37
May 26
164.50
Entertaining trade - Chrysler engineers 5/25, corsages, etc.
40
June 3
121.85
Entertaining Fisher - racetrack, dinners, etc.
42
June 14
197.70
Entertaining Ford Motor Co. - Stag party St. Clair Flats
46
June 24
118.00
Fishing licenses for trade
49
July 1
200.00
Adv. entertaining Fisher over weekend
57
July 29
167.30
Entertaining trade - Chrysler Eng.
59
Aug. 5
200.00
Partial entertaining
62
Aug. 26
132.00
Briggs 8/23 Studio $76.00; Embassy 8/25 $56.00
63
Aug. 31
126.80
Entertaining - Ford Motor
72
Sept. 29
128.75
Entertaining - Fisher Body
81
Oct. 21
91.80
Ent. Mr. & Mrs. A. H. Fisher Studio Oct. 24
82
Oct. 28
200.00
Ent. trade - Briggs partial for weekend Oct. 29
87
Nov. 10
199.85
Ent. trade - Chrysler Account
92
Nov. 14
300.00
Entertaining Chrysler Account N. Y. Auto Show
99
Dec. 23
200.00
Gifts to trade paid for in cash - waring mixers, painting, liquor
101
Dec. 30
200.00
Partial entertaining Briggs Purch., N. Y. Eve Party Bus $55.00, Din-
ners $81.00, Bus Driver $1.75, Liquor $91.50
1939
5
Jan. 27
$ 90.00
Entertaining trade Hockey tic.
6
Jan. 28
118.00
Party for Chrysler dinner & liquor for 16 eve. Jan. 27
13
Mar. 4
204.60
Mut. trade Fisher 2/25-26 $135.60; Briggs Hockey & Dinners $69.00
14
Mar. 28
132.90
Ent. trade Hockey Playoffs - Liquor $64.50, Tickets $68.40
17
Apr. 17
115.50
Entertaining trade 4/15-16
18
Apr. 17
200.00
Partial entertaining trade - Briggs opening party Jo Jo Farms
20
Apr. 28
124.70
Bal. Ent. Apr. 20 (see ck. $2442) Nat'l Auto. Parts Banq. $15.80;
Briggs-Chrysler 4/27 Book Cadillac
23
May 12
140.20
Ent. trade Bowling Banquet Fisher $98.60 - Tickets to Game, din-
ners, etc. $41.60
31
June 1
156.90
Ent. Island Hotel - Briggs May 27-28 - Fisher 5/29-30
34
June 8
715.00
Adv. Bloomfield Hills Country Club
40
June 23
126.00
Ent. trade - Fishing licenses, guides, etc.
42
July 1
100.00
Ent. trade 5 cases champagne used July 1, 2, 3, 4
43
July 6
126.60
Ent. trade - Briggs Fisher July 1, 2, 3, 4
72
Oct. 6
241.45
Ent. Stag Party Partial on Book $3
77
Oct. 30
167.48
Liquor for entertaining trade
78
Oct. 30
243.92
Entertaining trade - Fisher - at Detroit Athletic Club
86
Nov. 20
221.60
Railroad tickets. Est. trade Chrysler engineering Notre Dame So. Cal.
game
90
Nov. 27
90.00
Ent. trade Hockey tickets
92
Dec. 8
211.57
Keno Party Old Newsboys Ent. trade at Recess Club
95
Dec. 11
200.00
Ent. trade balance Nov. book & Partial Dec. book
97
Dec. 22
300.00
Ent. trade partial Dec. book
103
Dec. 29
226.70
Food, liquor, etc. - Open House to all customers
106
Dec. 30
248.26
Ent. trade - at The Recess Club
*510 Petitioner's chief purpose in making the expenditures for entertainment and gifts was to build up a personal friendship with purchasing agents, buyers, engineers and contact men of the automobile companies in the hope of being rewarded with business in later years. At most of the parties given by petitioner during the taxable years business was not usually discussed, and few of the sales made by him in either year resulted from the expenditures made in that year. $750 of the amount expended by petitioner during year 1938 and $1,000 of the amount expended by him during 1939 constituted ordinary and necessary expenses of carrying on his trade or business. Opinion The last finding is dispositive of the present issue. Section 23 of the Internal Revenue Code permits the deduction from gross income of "all the ordinary and necessary expenses paid or incurred * * * in carrying on a trade or business." This term has been defined in numerous decisions. See 6 g. Kornhauser v. United States, 276 U.S. 145; Deputy v. duPont, 308 U.S. 488; Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326. *511 Respondent's contention that the evidence is far from satisfactory as to the relation of the expenditures to petitioner's business (cf. W. B. Harbeson Lumber Co., 24 B.T.A. 542; Portland Damascus Milk Co., 22 B.T.A. 1236; N. H. Van Sicklen, Jr., 33 B.T.A. 544 is not wholly without merit; nor is his argument that there is substantial reason to believe that many of the expenditures may have been made by him on behalf of the F. L. McLaughlin Co. But we are convinced that at least the amounts which we have found to be ordinary and necessary expenses of carrying on his trade or business, were expended by petitioner and that they were both ordinary and necessary, notwithstanding his testimony indicates that at least some of them may have been made to establish good will. Cf. Houston Natural Gas Co. v. Commissioner, 90 Fed. (2d) 814, certiorari denied, 302 U.S. 722, affirming 34 B.T.A. 228. We have made an approximation of the amounts, as is frequently done, Cohan v. Commissioner, 39 Fed. (2d) 540; *512 and are conscious of the fact that the result is largely speculative. Without attempting to justify completely the conclusion which has been reached, it may be pointed out that many of the expenditures were purely social. In this category clearly fall the expenditures for the parties at petitioner's home and summer home. The expenditures for liquor are at least on the border line as are also those for fireworks, fishing license, corsages, and the other gifts. All of these circumstances have been considered. We have also given some consideration to the evidence of the "custom", which it is said exists among manufacturers' agents, of entertaining quite lavishly the representatives of the companies with which business is being carried on. Regardless of how well the custom of making such expenditures may have become established, it cannot be accepted as a substitute for proof that the expenditures were both ordinary and necessary. Cf. Kelley-Dempsey & Co., 31 B.T.A. 351; Rugel v. Commissioner, 127 Fed. (2d) 393; Alexandria Gravel Co. v. Commissioner, 95 Fed. (2d) 615. See also cases cited in *513 Hales-Mullaly, Inc., 46 B.T.A. 25, 31, affd., 131 Fed. (2d) 509. Petitioner is entitled to the deduction from gross income of $750 in 1938 and $1,000 in 1939. Respondent's disallowance of the remainder of the amounts claimed is approved. Issue II. - Long Distance Telephone Calls Findings of Fact During the taxable years petitioner drew checks payable to Michigan Bell Telephone Co. in the aggregate amounts of $471.80 for 1938 and $421.34 for 1939. The amounts were ordinary and necessary expenses of carrying on his trade or business. Opinion The sole evidence in connection with these expenditures, other than the stipulation of tge parties to the effect that checks aggregating those amounts were paid, consists of the testimony of petitioner. He stated that they were for wires (telegrams) and long distance telephone calls, that they were all expenses in connection with his personal office at 541 New Center Building, and that they pertained to the activities carried on by him personally rather than to those of the F. L. McLaughlin Co. We accept this as proof and allow the claimed deductions. Issue III. - Payments *514 to Charles Kuess Findings of Fact Petitioner paid to Charles Kuess $353.87 in 1938 and $536.11 in 1939. Payments were made by check, the details not being shown. Kuess was a salesman, employed by petitioner on a salary basis to sell products of the Elco Tool and Screw Corporation. The salary paid to him, aggregating $1,475 in 1938 and $1,657.50 in 1939, though originally in issue, has been conceded by respondent to be deductible. (See schedule above.) The amounts set out in the first paragraph of the findings on this issue represented reimbursements by petitioner to Kuess for payments made by him for gasoline, oil and entertaining customers. The entertainment consisted of taking customers to lunch, parties, dinners, hockey games, baseball games and football games. Petitioner did not tell Kuess how much to spend and he determined the amounts by "letting the evening take its course." No business resulted directly from Kuess' entertainment of customers. The record does not disclose what portion represented reimbursement for gasoline and oil. The amounts expended did not constitute ordinary and necessary expenses of carrying on petitioner's trade or business. Opinion The findings *515 have been based largely upon the testimony of Kuess. Petitioner stated merely that the expenditures were "for gasoline, oil and miscellaneous expenses and so forth." Kuess testified that petitioner told him to take his "customers to lunch occasionally and to ball games, hockey games and so forth." When asked to tell how the money was spent he said: "Well, it was most likely hockey games, baseball games, football games, lunches, dinners." He stated that records were kept showing the expenditures, that they were turned over to petitioner and that they were filed away. None, however, were produced at the hearing. It may well be that a portion of the amounts, especially any expended for gasoline and oil, would be deductible as ordinary and necessary expenditures; but since the records were not produced nor shown to be unavailable, we decline to hazard a guess. Moreover it may be pointed out in this connection that the deductions heretofore allowed, plus those conceded by respondent upon brief, aggregate a sum substantially equivalent to the total amount of the commissions received from the Elco Tool & Screw Corporation. This issue is resolved against petitioner for failure to sustain *516 his burden of proof. Issue IV. - Auto Expenses Findings of Fact "During the year 1938 petitioner deducted as auto expenses incurred the sum of $808.18. Of said sum, respondent disallowed as a personal expense of petitioner the sum of $308.18 and further disallowed 76.17% of the balance of said sum as corporate expense and allowed to petitioner as a deduction for automobile expense for the calendar year 1938 the sum of $119.15. There is no dispute between the parties as to the amount of automobile expense claimed but only as to the deductibility of said amount in computing petitioner's net income." (Stip. Par. 15.) "During the year 1939 petitioner deducted as auto expenses incurred the sum of $818.45. Of said sum, respondent disallowed as a personal expense of petitioner the sum of $318.45 and further disallowed $166.50 of the balance of said sum as corporate expense and allowed to petitioner as a deduction for automobile expense for the calendar year 1939 the sum of $333.50. There is no dispute between the parties as to the amount of automobile expense claimed but only as to the deductibility of said amount in computing petitioner's net income." (Stip. Par. 16.) The automobile *517 was used in traveling from plant to plant and in making trips to various motor and body companies. No distinction was made between its use by petitioner in connection with his business as a manufacturer's agent or as a representative of the F. L. McLaughlin Co. Petitioner owned another automobile which he used for personal and family use. Opinion The evidence on this issue - in addition to the stipulated facts - is very meager, and establishes only the facts set out in the last finding. They, in our judgment, are not sufficient to overcome the presumption of correctness attaching to respondent's determination. We therefore decline to disturb it. Issue V. - Salesmen Expenses and Traveling Expenses Findings of Fact The following checks were drawn and cashed by petitioner in 1939: April 6
$32.94
May 22
$ 29.57
June 8
46.85
May 22
150.00
Total
$79.79
Those shown in the first column were allocated by petitioner to "Salesmen Expense." The one dated April 6 bearing the notation "Expense Account," is made payable to cash and is not otherwise explained. The one dated June 8 bears the notation "Ent. trade Chrysler dinners Island Hotel". Neither is shown to have *518 been an ordinary and necessary expense of carrying on petitioner's trade or business. The first check shown in the second column bears the notation "1 Comp (compartment) to Chicago, 2 tickets." The second bears the notation "Rockford, Ill. partial expense $109.75. $40.25 personal." The amount claimed as a deduction from gross income is $139.32. ($29.57 + $109.75.) In May, 1939, petitioner made a trip to Rockford, Ill., taking his salesman Charles Kuess along in order to enable him to become better acquainted with the products which he was selling. The amount of $139.32 represented the expenses paid in connection with this trip and was an ordinary and necessary business expense. Opinion Upon the basis of the findings petitioner's claim for the deduction of $79.79 is denied and the deduction of $139.32 is allowed. Issue VI. - Legal and Professional Services Findings of Fact Checks bearing dates and notations as shown below were written by petitioner during 1939: May 26
Douglas, Barbour
Legal and Professional
$250.00
Aug. 18
F. H. & W. A. Wolf
Legal and Professional
100.00
Dec. 26
C. A. Stukins
Professional services
150.00
Dec. 30
F. H. & W. A. Wolf
Legal and Professional
57.50
Total
$557.50
*519 $307.50 of the above amount was paid for bookkeeping expenses and in connection with "a bookkeeping service that comes once every month to go over * * * (petitioner's) books." It was an ordinary and necessary business expense. The payment of $250 to Douglas, Barbour was for legal services. Opinion Petitioner's claim for the allowance of $307.50 as an ordinary and necessary business expense is allowed. The explanation given by him of the payment to the attorney is too vague to serve as the basis of an allowance. He said: "I am not positive I can itemize that. He went over some sales agreements for me and we were looking over some other accounts, the definite reason I can't tell." This is the sole evidence on this item. It, in our judgment, is not sufficient to prove that the expenditure was an ordinary and necessary business expense. The claimed deduction of $250 is therefore disallowed. Issue VII Findings of Fact "In January, 1938, petitioner purchased stock in Air Rite Sales Corporation for the sum of $501.00. During the years 1938 and 1939, petitioner advanced to Air Rite Sales Corporation the sum of $3,134.84. In 1939, Air Rite Sales Corporation ceased to do business, *520 being hopelessly insolvent and petitioner charged off the sum of $3,490.76, as a bad debt on his income tax return for the calendar year 1939. It is agreed that the foregoing amount is erroneous and that petitioner intended to charge off the sum of $501.00 paid for the stock of Air Rite Sales Corporation plus the further sum of $3,134.84, representing advances to said corporation. It is further agreed that petitioner suffered a total loss of $3,635.64 in the year 1939 by reason of the failure of Air Rite Sales Corporation during said year and that $501.00 thereof represents a loss suffered by petitioner by reason of his stock in said corporation becoming worthless in said year. Petitioner claims that the entire loss, with the exception of the $501.00 paid for the stock of the company, constitutes a bad debt, ascertained to be worthless and charged off in the calendar year 1939. Respondent claims that the entire amount of the loss, namely $3,635.84, was an investment loss arising out of the failure of Air Rite Sales Corporation." (Par. 19 - Stip.) The Air Rite Sales Corporation was organized in 1938 by petitioner, Leo Fagin and Harold F. Miner. Fagin and Miner paid nothing for the *521 stock issued to them but each received 24 1/2 percent of the authorized stock. Petitioner paid $501 and received 51 percent of the stock. The Air Rite Sales Corporation was organized for the purpose of selling a cream whipper which was to be manufactured by the Air Rite Manufacturing Co. The amount advanced by petitioner was used in purchasing machinery and in buying metal, chrome plate, oxygen, etc., to be used in manufacturing the product to be sold. Petitioner was president of the Air Rite Sales Corporation. No notes or other memoranda of indebtedness were given by the corporation to him. He considered the amounts to be loans and expected them to be repaid. The aggregate amount of $3,134.84 was a debt of the corporation to petitioner. It became worthless in 1939, was ascertained by him to be worthless and was charged off in the return filed for that year. The $501 paid for the stock of the corporation represents a loss sustained by petitioner by reason of the stock becoming worthless in 1939. Opinion Under section 23(k) of the Revenue Act of 1938 "debts ascertained to be worthless and charged off within the taxable year" were deductible from gross income. Section 124 of the *522 Revenue Act of 1942 amended this section, limiting the deduction to "debts which become worthless within the taxable year" and it is retro-active to the taxable year now before us. The question is not whether worthlessness occurred or whether there was an ascertainment and charge-off but whether there was a "debt". It has been resolved in petitioner's favor. The evidence shown that petitioner regarded the advances as a debt, expected repayment to be made, and did not consider that he was making an additional "investment" in the company. He stated that the money was loaned for the purpose of enabling it to secure the products which were to be sold. While the evidence is quite meager and to some extent a mere conclusion on the part of petitioner, it has been deemed to be sufficient to justify the claimed deduction. Cf. Helvering v. Taylor, 293 U.S. 507; Robert H. Montgomery, 37 B.T.A. 232. Respondent's suggestion that the company was known to be insolvent when the advances were made and hence no deduction may be allowed under the rationale of such cases as W. F. Young, Inc. v. Commissioner, 120 Fed. (2d) 159, *523 has been considered; but we are not convinced that the company was then insolvent. This issue is therefore resolved in favor of petitioner and he is allowed a deduction of $3,134.84 as a bad debt rather than the amount of $3,490.76 claimed in his return. Apparently the parties agree that petitioner sustained a loss of $501 in connection with his investment in the stock of the Air Rite Sales Corporation. No issue concerning the portion which is deductible under Section 117 is submitted to us. Effect will be given to the other adjustments and concessions of the parties in the recomputation of the deficiencies. Decision will be entered under Rule 50.