## TEXTILE MILLS SECURITIES CORP. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 34.  Argued November 10, 1941.—Decided December 8, 1941.

*Mr. Edmund S. Kochersperger* for petitioner.

*Mr. Arnold Raum,* with whom *Attorney General Biddle, Assistant Attorney General Clark,* and *Miss Helen R. Carloss* and *Mr. Samuel H. Levy* were on the brief, for ·respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case presents two problems: (1) whether a Circuit Court of Appeals may be composed of all the circuit judges of the circuit in active service, more than three in number, sitting *en banc;* (2) whether petitioner may deduct under the Revenue Act of 1928 (45 Stat. 791) certain expenses incurred by it under contracts in connection with the presentation of claims to Congress on behalf of former enemy aliens for the procurement and enactment of amendatory legislation authorizing the payment of the claims. We granted the petition for certiorari because of the public importance of the first problem and the contrariety of the views of the court below (117 F. 2d 62) and judges of the Circuit Court of Appeals for the Ninth Circuit (*Lang's Estate* v. *Commissioner,* 97 F. 2d 867) as respects its solution.

*First:* There are five circuit judges,[1] in active service,[2] of the Circuit Court of Appeals for the Third Circuit. All five heard and decided this case. Though they divided three to two on the deductibility of the expenses in question, they were unanimous in the conclusion that five were authorized to hear and decide the case.[3]

---

[1] Judicial Code § 118, 28 U. S. C. § 213; Act of June 10, 1930, c. 438, 46 Stat. 538, 28 U. S. C. § 213d; Act of June 24, 1936, c. 753, 49 Stat. 1903, 28 U. S. C. § 213d–1.

[2] As distinguished from judges retired under the provision of § 260 of the Judicial Code, 28 U. S. C. § 375.

[3] The Circuit Court of Appeals for the Third Circuit has promulgated rules in accord with that view. Rule 4 (1) provides: "The court

The problem arises because § 117 of the Judicial Code (28 U. S. C. § 212; 36 Stat. 1131) provides that "There shall be in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum, which shall be a court of record, with appellate jurisdiction, as hereinafter limited and established." That provision derives from § 2 of the Act of March 3, 1891, 26 Stat. 826, which established the circuit court of appeals.[4] Though Congress by that Act created these new courts, it did not make provision for the appointment to them of a new group of judges. It provided, however, by § 3 of that Act that the Chief Justice and Associate Justices of the Supreme Court assigned to each circuit and the circuit judges and district judges within each circuit "shall be competent to sit as judges of the circuit court of appeals within their respective circuits." Thus it is apparent that the newly created circuit court of appeals was to be composed of only three judges [5] who were to be

consists of the circuit justice, when in attendance, and of the circuit judges of the circuit who are in active service. District judges and retired circuit judges. of the circuit sit in the court when specially designated or assigned as provided by law. Three judges shall sit in the court to hear all matters, except those which the court by special order directs to be heard by the court *en banc*."

[4] Sec. 2 provided in part: "That there is hereby created in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum, and which shall be a court of record with appellate jurisdiction, as is hereafter limited and established."

[5] Sec. 3 of that Act provided: "In case the full court at any time shall not be made up by the attendance of the Chief-Justice or an associate justice of the Supreme Court and circuit judges, one or more district judges within the circuit shall be competent to sit in the court according to such order or provision among the district judges as either by general or particular assignment shall be designated by the court . . ." And it should be noted that after the passage of the Act of March 3, 1891, there were three circuit judges in the Second Circuit and two in each of the others. Act of April 10, 1869, c. 22,

drawn from the three existing groups of judges—the circuit justice, the circuit judges, and the district judges.

That arrangement continued until enactment of the Judicial Code. Act of March 3, 1911, c. 231, 36 Stat. 1087. The Judicial Code abolished the existing circuit courts. § 297. It carried over into § 117 without substantial change the provision of § 2 of the Act of March 3, 1891 that there should be a circuit court of appeals in each circuit "which shall consist of three judges." Though this section was said merely to represent existing law,[6] § 118 of the Judicial Code provided for four circuit judges in the Second, Seventh, and Eighth Circuits, two in the Fourth Circuit, and three in each of the others. An anomalous situation was presented if § 117 were to be taken at that juncture as meaning that the circuit court of appeals would continue to be composed of only three, in face of the fact that there were more than three circuit judges in some circuits. Though § 3 of the Act of March 3, 1891, made the circuit judges "competent to sit as judges of the circuit court of appeals within their respective circuits," § 120 of the Judicial Code into which the provisions of § 3 were carried eliminated the circuit judges from the groups of judges "competent to sit." Yet it retained the provision that the circuit justices and the district judges were so qualified. We agree, however, with the view of the court below that the circuit judges became *ex officio* judges of the respective circuit courts of appeals when the circuit courts were abolished. Though § 120 did not designate them as "competent to sit," its other provisions made clear that they were intended to sit. Thus, it was provided that the district judges should be drawn upon only in case the court could not be made up by the

---

§ 2, 16 Stat. 44; Act of March 3, 1887, c. 347, 24 Stat. 492; Act of March 3, 1891, c. 517, § 1, 26 Stat. 826.

[6] S. Rep. No. 388, 61st Cong., 2d Sess., Pt. 1, p. 49, Pt. 2, p. 310.

circuit justices and the circuit judges.[7]   Yet, if § 117 were to be ready literally, the circuit court of appeals was to "consist" of only three judges in spite of the fact that Congress had already provided in some circuits for more than three circuit judges.   Clearly, where there were four, all could not be members of a court of three.   Yet there was plainly inferable a Congressional purpose to constitute in some circuits a circuit court of appeals of four judges.[8]

Any doubts on that score [9] were resolved by the Act of January 13, 1912, c. 9, 37 Stat. 52, which amended § 118 of the Judicial Code by the addition of the provision that "The circuit judges in each circuit shall be judges of the circuit court of appeals in that circuit, and it shall be the duty of each circuit judge in each circuit to sit as one of the judges of the circuit court of appeals in that circuit from time to time according to law."   Senator Sutherland who had charge of the bill in the Senate stated on the floor: "It makes no change whatever in the existing law except to make it clear that the circuit judges in the various circuits of the United States shall constitute the circuit

---

[7] "In case the Chief Justice or an associate justice of the Supreme Court shall attend at any session of the circuit court of appeals, he shall preside.   In the absence of such Chief Justice, or associate justice, the circuit judges in attendance upon the court shall preside in the order of the seniority of their respective commissions.   In case the full court at any time shall not be made up by the attendance of the Chief Justice or the associate justice, and the circuit judges, one or more district judges within the circuit shall sit in the court according to such order or provision among the district judges as either by general or particular assignment shall be designated by the court . . ."

[8] Thus the Senate Report, *supra* note 6, in speaking of § 118 (§ 116 in the bill) stated, p. 50: ". . . the section states in concise language the number of judges now provided by law for the several judicial circuits."

[9] See the letter by Albert H. Walker in 74 Central L. J. 12.

court of appeals." [10]   The purpose seems plain: the size of each circuit court of appeals was not to be less than the number of circuit judges authorized by law.[11]

And so we reach the question as to whether the avowed purpose of § 118 was defeated by § 117.   We do not think it was.

That purpose was not thwarted by the provision in the 1912 amendment to § 118 that "it shall be the duty of each circuit judge in each circuit to sit as one of the judges of the circuit court of appeals in that circuit from time to time according to law."   It has been suggested that "ac-

---

[10] 47 Cong. Rec., Pt. 3, p. 2736.  Senator Sutherland also said: "It has been thought, as I said, that the existing law did not make it quite clear that the circuit judges shall be the constituent members of the circuit court of appeals, and it is to remove that doubt, and that only, that this bill has been reported from the Judiciary Committee." *Id.*, p. 2736.  H. Rep. No. 199, 62d Cong., 2d Sess., stated, "This bill deals with a defect in existing law.  It makes it clear that the circuit judges shall constitute the circuit court of appeals."  And see the statements on the floor of the House by Representative Clayton, chairman of the House Judiciary Committee (48 Cong. Rec., Pt. 1, p. 667) and Representative Moon, chairman of the House Committee on the Revisions of the Laws, who had been in charge of the House bill providing for the Judicial Code.  *Id.*, p. 668.

Possible inferences looking the other way are such statements by Representative Mann that "in those circuits where there were four circuit judges, one of them might be put at work in the district court." 48 Cong. Rec., Pt. 1, p. 667.  And see 48 Cong. Rec., Pt. 2, p. 1272. Yet such statements are not inconsistent with the conclusion that while the ordinary complement of circuit judges would be three, all might sit.

[11] In this connection it should be noted that § 120 of the Judicial Code makes the "Chief Justice and the associate justices of the Supreme Court assigned to each circuit . . . competent to sit as judges of the circuit court of appeals within their respective circuits."  Thus while the circuit court of appeals is composed primarily of circuit judges, the circuit justice is made a "component part" of that court.  See statement by Representative Moon, *op. cit., supra,* note 10, p. 668.

cording to law" refers to § 117. In our view, however, it is the time of the sitting which is to be "according to law." Hence, the reference must be to § 126 of the Judicial Code (28 U. S. C. § 223) which regulates the times when the circuit courts of appeals shall sit.

If § 117 could reasonably be construed to provide that the court, *when sitting,* should consist of three judges drawn from a panel of such larger number as might from time to time be authorized, reconciliation with § 118 would be obvious. Sec. 117, however, contains no such qualification. And since it establishes the court as a "court of record, with appellate jurisdiction," it cannot readily be inferred that the provision for three judges is a limitation only on the number who may hear and decide a case. There are numerous functions of the court, as a "court of record, with appellate jurisdiction," other than hearing and deciding appeals. Under the Judicial Code these embrace prescribing the form of writs and other process and the form and style of its seal (§ 122); the making of rules and regulations (§ 122); the appointment of a clerk (§ 124) and the approval of the appointment and removal of deputy clerks (§ 125); and the fixing of the "times" when court shall be held. § 126. Furthermore, those various sections of the Judicial Code provide that each of these functions shall be performed by the "court." In that connection it should be noted that most of them derive, as does § 117, from § 2 of the Act of March 3, 1891. The first sentence of § 2 provided that the court "shall consist of three judges." The next sentence stated that "Such court shall prescribe the form and style of its seal and the form of writs and other process and procedure," etc. In that setting it is difficult to perceive how the word "court" in the second sentence was used in a different sense than in the preceding sentence. And we look in vain for any indication [12] that when those separate sentences were

---

[12] Sec. 122 of the Judicial Code (§ 120 in the bill) giving the court power to prescribe the form of writs and other process and the form

sectionalized in the Code, they acquired a meaning which they did not have in § 2 of the Act of March 3, 1891.

We cannot conclude, however, that the word "court" as used in those other provisions of the Judicial Code means only three judges. That would not only produce a most awkward situation; it would on *all* matters disenfranchise some circuit judges against the clear intendment of § 118. Nor can we conclude that the word "court" means only three judges when the court is sitting, but all the judges when other functions are performed. Certainly there is no specific authority for that construction. And it is difficult to reach that conclusion by inference. For to do so would be to imply that Congress prohibited some circuit judges from participation in the most important function of the "court" (the hearing and the decision of appeals), though allowing all of them to perform the other functions. Such a prohibition as respects the ordinary responsibilities of a judicial office should be inferred only under compelling necessity, since a court usually will consist of all the judges appointed to it. That necessity is not present here. The ambiguity in the statute is doubtless the product of inadvertence. Though the problem of construction is beset with difficulties, the conclusion that § 117 provides merely the permissible complement of judges for a circuit court of appeals results in greater harmony in the statutory scheme [13] than if the language of

---

and style of its seal, and the power to make rules and regulations was stated in S. Rep. No. 388, *supra,* note 6, p. 51, to represent "existing law."

[13] It is suggested by respondent that if the Circuit Court of Appeals may sit *en banc,* difficulties arise in connection with that provision of § 120 of the Judicial Code which reads: "In case the full court at any time shall not be made up by the attendance of the Chief Justice or the associate justice, and the circuit judges, one or more district judges within the circuit shall sit in the court according to such order or provision among the district judges as either by general or particular

§ 117 is taken too literally. And any sacrifice of literalness for common sense does no violence to the history of § 117. That history is largely negative in the sense that there is no clear statement by sponsors of this legislation that § 118, read in light of § 117, prevents the conclusion which we have reached.[14] Certainly, the result reached makes for

assignment shall be designated by the court . . ." The difficulty suggested is that § 120 would imply that, if all the circuit judges compose the "court," then district judges should be called in whenever the court was composed of less than that number. And the argument goes further and suggests that since the circuit justice is "competent to sit" (see note 11, *supra*) then a district court judge could be brought in, when the circuit justice is absent, to make up the "full court" even though all circuit judges sat. The answer, however, is that "full court" as used in § 120 refers to the court which contains the permissible complement of judges as distinguished from a quorum of two. Under our interpretation, a bench of three judges is the permissible complement under § 117.

[14] Beginning in 1938 the Judicial Conference of Senior Circuit Judges recommended an amendment to the Code which would enable a majority of the circuit judges in circuits where there were more than three to provide for a court of more than three judges. Report of the Attorney General (1938) p. 23; *id.* (1939) pp. 15–16; Report of the Judicial Conference of Senior Circuit Judges (1940) p. 7. A bill was introduced during the present session of Congress in both the House (H. R. 3390) and the Senate (S. 1053) to amend § 117 of the Judicial Code by adding thereto the following: *"Provided,* That, in a circuit where there are more than three circuit judges, the majority of the circuit judges may provide for a court of all the active and available circuit judges of the circuit to sit in banc for the hearing of particular cases, when in their opinion such action is advisable."

This bill has passed the House. 87 Cong. Rec. 8328. In the House, the Committee on the Judiciary reported the bill favorably (H. Rep. No. 1246, 77th Cong., 1st Sess.) stating:

"Under existing law provision is made that there shall be in each circuit a circuit court of appeals which shall consist of three judges, of whom two shall constitute a quorum. The bill adds a provision that in a circuit where there are more than three circuit judges, the majority of the circuit judges may provide for a court of all the active and

more effective judicial administration.[15]   Conflicts within
a circuit will be avoided.   Finality of decision in the cir-
cuit courts of appeal will be promoted.   Those considera-
tions are especially important in view of the fact that in
our federal judicial system these courts are the courts of
last resort in the run of ordinary cases.   Such considera-
tions are, of course, not for us to weigh in case Congress
has devised a system where the judges of a court are pro-
hibited from sitting *en banc*.   But where, as here, the case
on the statute is not foreclosed, they aid in tipping the
scales in favor of the more practicable interpretation.

*Second:*   The expenses in question are sought to be de-
ducted as "ordinary and necessary expenses" within the
meaning of § 23 (a) of the Revenue Act of 1928.   Peti-
tioner, a Delaware corporation, was employed to represent
certain German textile interests, whose properties in this

available circuit judges of the circuit to sit in banc for the hearing
of particular cases, when in their opinion such action is advisable.

"If the court can sit in banc the situation where two three-judge
courts may reach conflicting conclusions is obviated.   It also will obviate
the situation where there are seven members of the court and as some-
times happens a decision of two judges (there having been a dissent)
sets the precedent for the remaining judges.   A similar result would be
avoided with a court of five judges.

"It seems desirable that where the judges feel it advisable they might
sit in banc for hearing particular cases.   Legislation to this effect has
been recommended by the judicial conference of senior circuit judges
since 1938, and at its January 1941 session the conference approved the
form of the present bill."

But we do not deduce that this effort at clarification was or purported
to be any definitive interpretation that § 117 as it stands prohibits a
circuit court of appeals of more than three judges from sitting
*en banc*.

[15] See H. Rep. No. 1246, *supra,* note 14; 69 Central L. J. 217.   And see
the testimony of Chief Justice Taft and Mr. Justice Van Devanter,
Hearings, Committee on the Judiciary, House of Representatives,
70th Cong., 2d Sess., Serial 23, Pt. 2, on H. R. 5690, 13567, 13757,
pp. 69, 72.

country had been seized during the World War under the provisions of the Trading with the Enemy Act. 40 Stat. 411. Petitioner's employment was made with a view towards procuring legislation which would permit ultimate recovery of the properties. The estimated aggregate value of the properties was $60,000,000. Petitioner was to be compensated on a percentage basis in case it was successful. It, however, was to bear all the costs and expenses. Petitioner launched its campaign. A publicist was retained to arrange for speeches, news items, and editorial comment. Two legal experts were retained to prepare propaganda concerning international relations, treaty rights and the policy of this nation as respects alien property in time of war. The objective of the campaign was accomplished by the passage of the Settlement of War Claims Act of 1928, 45 Stat. 254. Deductions for the amount paid to the publicist and the two lawyers were taken in 1929 and 1930, thereby producing a net loss in each of those years. Pursuant to § 117 of the 1928 Act, the net loss was carried forward two years and applied against income for 1931. The Commissioner disallowed the deductions and determined a deficiency. The Board of Tax Appeals disagreed, holding that there was no deficiency. 38 B. T. A. 623. The Circuit Court of Appeals reversed the Board.

We agree that the expenses in question were not deductible. Art. 262 of Treasury Regulations 74, promulgated under the 1928 Act, was entitled "Donations by corporations" and provided:

"Corporations are not entitled to deduct from gross income contributions or gifts which individuals may deduct under section 23 (n). Donations made by a corporation for purposes connected with the operation of its business, however, when limited to charitable institutions, hospitals, or educational institutions conducted for the benefit of its employees or their dependents are a proper

deduction as ordinary and necessary expenses. Donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business are allowable deductions from gross income. For example, a street railway corporation may donate a sum of money to an organization intending to hold a convention in the city in which it operates, with the reasonable expectation that the holding of such convention will augment its income through a greater number of people using the cars. Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses, are not deductible from gross income."

If this is a valid and applicable regulation, the sums in question were not deductible as "ordinary and necessary expenses" under § 23 (a), since they clearly run afoul of the prohibition in the last sentence of the regulation.

Plainly, the regulation was applicable. The ban against deductions of amounts spent for "lobbying" as "ordinary and necessary" expenses of a corporation derived from a Treasury Decision in 1915. T. D. 2137, 17 Treas. Dec., Int. Rev., pp. 48, 57–58. That prohibition was carried into Art. 143 of Treasury Regulations 33 (Revised, 1918) under the heading of "Expenses" in the section on "Deductions." [16] Beginning in 1921 the regulation was entitled "Donations." (Art. 562, Treasury Regulations 45.) And in the regulations here in question Art. 262 appeared under § 23 (n), which covered "Charitable and other contribu-

[16] Art. 143 provided: "Lobbying expenses.—Sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, and contributions for campaign expenses are held not to be an ordinary and necessary expense in the operation and maintenance of the business of a corporation, and are therefore not deductible from gross income in arriving at the net income upon which the income tax is computed."

tions" by individuals. It assumed that form and content in 1921 and appeared since then without change in all successive regulations.[17] Sec. 23 (n) and § 23 (a) both deal with deductions; and a "donation" by a corporation though not deductible under the former might be under the latter. Art. 262 purports to specify when a certain type of expenditure or donation by a corporation may or may not be deducted as an "ordinary and necessary" expense. The argument that it was not applicable because it was not specifically incorporated under § 23 (a) is frivolous.

Petitioner's argument that the regulation is invalid likewise lacks substance. The words "ordinary and necessary" are not so clear and unambiguous in their meaning and application as to leave no room for an interpretative regulation. The numerous cases which have come to this Court on that issue bear witness to that. *Welch* v. *Helvering,* 290 U. S. 111; *Deputy* v. *du Pont,* 308 U. S. 488, and cases cited. Nor has the administrative agency usurped the legislative function by carving out this special group of expenses and making them non-deductible. We fail to find any indication that such a course contravened any Congressional policy.[18] Contracts to spread such insidious influences through legislative halls have long been condemned. *Trist* v. *Child,* 21 Wall. 441; *Hazelton* v. *Sheckells,* 202 U. S. 71. Whether the precise arrangement here in question would violate the rule of those cases is not

---

[17] Art. 562, Regulations 62, Revenue Act of 1921; Art. 562, Regulations 65, Revenue Act of 1924; Art. 562, Regulations 69, Revenue Act of 1926; Art. 262, Regulations 74, Revenue Act of 1928.

[18] In the Revenue Act of 1936 (26 U. S. C. § 23 (q), 49 Stat. 1648) Congress specifically provided for deductions of certain contributions by corporations to specified corporations, trusts, funds, or foundations, "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation." And see the Revenue Act of 1938, 26 U. S. C. § 23 (q), 52 Stat. 447.

material. The point is that the general policy indicated by those cases need not be disregarded by the rule-making authority in its segregation of non-deductible expenses. There is no reason why, in absence of clear Congressional action to the contrary, the rule-making authority cannot employ that general policy in drawing a line between legitimate business expenses and those arising from that family of contracts to which the law has given no sanction. The exclusion of the latter from "ordinary and necessary" expenses certainly does no violence to the statutory language. The general policy being clear it is not for us to say that the line was too strictly drawn.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or disposition of this case.