The Mosby Hotel Co. v. Commissioner.
Mosby Hotel Co. v. Commissioner
Docket No. 48058.
United States Tax Court
T.C. Memo 1954-182; 1954 Tax Ct. Memo LEXIS 63; 13 T.C.M. (CCH) 996; T.C.M. (RIA) 54288; October 22, 1954, Filed Elmer E. Fox, C.P.A., and Robert C. Foulston, Esq., for the petitioner. Marvin E. Hagen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1948 and 1949 in the amounts of $1,900 and $2,487.20, respectively. The issues here presented are: (1) Did the Commissioner err in denying and reducing by $7,000 the total amount claimed by petitioner as a deduction in 1949, which total amount petitioner paid Nellie M. Mosby for her services in that year as its president and general manager? (2) Were special assessments paid by petitioner to Kansas Hotel Association of $5,000 in 1948 and $1,250 in 1949 for the use of the Kansas Legal Control Counsel in a campaign to change *64 the law of the State of Kansas in respect to prohibition of the sale and manufacture of intoxicating liquor deductible as ordinary and necessary business expense? One other adjustment is not in dispute. Findings of Fact Some of the facts were stipulated and are so found. Petitioner is a Kansas corporation and has operated continuously from 1927 to the present a hotel in Topeka, Kansas, known as the Hotel Jayhawk, hereinafter called the Jayhawk. Petitioner filed its income tax return for the years 1948 and 1949 with the collector of internal revenue for the district of Kansas. It was on the accrual basis of accounting and its returns were filed accordingly. Nellie M. Mosby, hereinafter called Mrs. Mosby, owns approximately two-thirds of petitioner's stock, and her nephew, Harry Lose, owns the balance. From 1934 to 1949 Mrs. Mosby has been president, general manager and chairman of its board of directors. During 1948 and 1949 Harry Lose was its vice-president and assistant manager in the front office. Mrs. Mosby has been actively engaged in the hotel business since 1918. In 1926 Mrs. Mosby, her husband and her father-in-law leased and operated the Jayhawk. Her husband *65 died in 1931 and her father-in-law in 1934, since which time Mrs. Mosby has managed the Jayhawk. In 1934 petitioner owed $50,000 in back rent and was in bad financial condition, having a deficit on December 31, 1944, of $136,998.51. The company owning the building occupied by the Jayhawk, having faith in Mrs. Mosby's ability, agreed that if she would manage the Jayhawk, the back rents could be paid in installments. Under her management petitioner's business gradually grew and prospered, and by December 31, 1949, it had a surplus of $329,237.24. The net income before taxes, net income after taxes, officers' salaries, and earned surplus reported on petitioner's income tax returns for the years indicated are as follows: Net Income
Net Income
Officers'
Earned Surplus
Year
Before Taxes
After Taxes
Salaries
End of Year
1946
$121,834.58
$75,537.44
$24,000.00
$110,625.07
1947
123,453.24
76,541.01
24,000.00
186,840.87
1948
124,206.74
77,008.18
26,000.00
263,401.05
1949
116,173.37
72,027.49
36,000.00
329,237.24
From 1934 to 1939, inclusive, petitioner paid no dividends. Topeka is the capital of the State of Kansas. In 1949 it had *66 a population of about 85,000. There are three main U.S. highways running through Topeka, two main railroads, the Rock Island and Santa Fe, and it is a terminal for Trans World Airlines, Inc. An army air base known as Forbes Base is located near Topeka. The Jayhawk Hotel is located in the downtown area of Topeka, Kansas. It has 10 floors, a roof garden, and approximately 300 rooms. It also has a coffee shop and ballroom. During 1949 petitioner had about 135 employees. The Jayhawk and the Kansan are the two leading hotels in Topeka and are about the same size and rank. During 1939 and in all years while she was president and general manager of petitioner's business, Mrs. Mosby performed all duties usually required of one holding such position, including hiring and firing of employees, etc., and in addition thereto she rendered other services to petitioner which managers generally delegated to others. These services performed by her saved petitioner the salaries and expense of several additional executive employees, including an assistant catering manager, an executive housekeeper and an inspectress, at an approximate monthly cost of $350, $250 and $150, respectively. Mrs. Mosby *67 was a good executive and a hard worker. She generally arrived at the Jayhawk at seven-thirty A.M. and remained there in the performance of her duties until nine or ten o'clock at night. Petitioner's success is largely attributable to Mrs. Mosby's services and management. The net profit of the Jayhawk, before income taxes, was largely in excess of that of other hotels of the same size and volume of business. Statistics from reliable sources proved this. For the years 1946 through 1949, the compensation paid the officers of petitioner was as follows: Nellie M.
Year
Total
Mosby
Harry Lose
1946
$24,000.00
$15,000.00
$9,000.00
1947
24,000.00
15,000.00
9,000.00
1948
26,000.00
17,000.00
9,000.00
1949
36,000.00
27,000.00
9,000.00
There was a corporate resolution which fixed the amount of the salary paid to Mrs. Mosby of $1,000 per month, plus a $3,000 annual bonus until November 1, 1948, and thereafter $2,000 per month plus a $3,000 annual bonus. The increased monthly salary paid her began in November, 1948. Her total salary for 1949 was $2,000 paid monthly and a $3,000 bonus. This bonus had also been paid to her in prior years. Petitioner *68 in its income tax return for 1949 claimed a deduction of $27,000 for compensation paid Mrs. Mosby in that year. Respondent in his deficiency notice disallowed $7,000 of this claimed deduction and allowed and approved same only in the amount of $20,000. Reasonable compensation for services rendered by Mrs. Mosby to petitioner in 1949 was $27,000. In 1947 the Kansas legislature proposed, by resolution, that the voters decide whether Section 10, Article 15 of the Constitution of the State of Kansas should be amended to read as follows: Sec. 10. The legislature may provide for the prohibition of intoxicating liquors in certain areas. Subject to the foregoing, the legislature may regulate, license, and tax the manufacture and sale of intoxicating liquors and may regulate the possession and transportation of intoxicating liquors. The open saloon shall be and is hereby forever prohibited. Early in 1948 an organization known as the Kansas Legal Control Council was formed for the purpose of conducting a campaign to repeal the prohibition laws of the State of Kansas. About the same time another organization known as the Kansas United Dry Forces was actively conducting a campaign against *69 repeal of the prohibition laws of Kansas. Both the so-called "wet" forces and "dry" forces conducted an extensive advertising campaign by placing numerous advertisements in Kansas daily and weekly newspapers. During the years 1948 and 1949 petitioner was a member of a trade association known as the Kansas Hotel Association. In 1948 and 1949 petitioner contributed by special assessments the sums of $5,000 and $1,250, respectively, to the Kansas Hotel Association, which sums, as petitioner intended they should be, were turned over by that organization to the Kansas Legal Control Council for use in connection with the campaign to repeal the prohibition laws of Kansas. During the period January 1, 1948, to September 26, 1949, the Kansas Hotel Association contributed the total sum of $20,000 to the Kansas Legal Control Council for use in connection with the campaign to repeal the prohibition laws of Kansas. The Kansas Legal Control Council also received contributions from various individuals. During the years 1948 and 1949 the Kansas Legal Control Council expended the sum of $50,357.70 in connection with its campaign to repeal the prohibition laws of Kansas. The bulk of the expenditures *70 was for newspaper advertising, office rent, posters, billboards, radio time, postage, salaries, and travel expense. The constitutional amendment proposed by the 1947 legislature was adopted by the voters of the State of Kansas at a general election held on November 2, 1948, and in 1949 the legislature enacted legislation authorized in the constitutional amendment. Some time after the general election held on November 2, 1948, the Kansas Legal Control Council continued to place advertisements in daily and weekly newspapers in Kansas which read in effect that the legislature must still act to repeal the prohibition laws of Kansas. After the general election of November 2, 1948, the Kansas Legal Control Council also polled its members to find out what type of liquor laws they preferred. The results of that poll were made available to the press and the 1949 legislature. Most of the Council's proposals were adopted by the 1949 legislature when it repealed the so-called "bone-dry-laws" and passed legislation legalizing the sale of liquor by the package, subject to local option. A substantial part of the activities of the Kansas Legal Control Council was devoted to lobbying purposes, *71 the promotion or defeat of legislation, and the exlolitation of propaganda. Opinion Concerning the first issue we have found as an ultimate fact that reasonable compensation in 1949 for the services performed by Mrs. Mosby for petitioner was the amount paid her and claimed as a deduction by petitioner. In reaching this conclusion we are not unmindful of the fact that the burden of proof is upon petitioner to show that the respondent erred in his deficiency notice in reducing by $7,000 the deduction claimed. This we think petitioner has done. In our findings of fact we have set out in detail the evidence and we deem it unnecessary to reiterate it here. Suffice it to say that we have considered all of the evidence and the record as a whole in arriving at this conclusion. We think a recital of the facts contained in our findings is sufficient and that no argument or discussion is required to justify our holding. The three basic facts upon which our finding rests are these: (1) The labor and services which Mrs. Mosby performed and the time devoted by her to the business of petitioner; (2) her skill and managerial ability based upon her years of experience in the hotel business, *72 and (3) the results achieved by her. Under her management she converted petitioner from a bankrupt institution owing $50,000 in back rent and with a deficit of more than $136,000 to a prosperous business having an earned surplus in excess of $300,000 in the taxable year in question. We have found that petitioner's success is largely attributable to Mrs. Mosby's services and management, which the evidence amply sustains. Petitioner also supported its contention by the testimony of two competent and disinterested witnesses who testified that $27,000 was reasonable compensation in 1949 for the services performed by Mrs. Mosby, and respondent offered no witness contradicting same. On cross examination of one of these witnesses, respondent's counsel elicited the fact that the manager of the Kansan Hotel in Topeka, in 1949, was paid a salary substantially less than that paid Mrs. Mosby. However, it appeared that the Kansan was a chain hotel, and in addition to the salary paid its local manager, it had to pay a large sum for chain management executives, and this, together with the allowances of board and meals furnished the local manager and his family, made the difference in the sums *73 paid by the two hotels for executive management only a few thousand dollars. This does not impair the testimony of the witness given on direct examination. Furthermore, the witness stressed the large net profits of petitioner, exceeding those of the Kansan, as one of the reasons justifying the salary paid Mrs. Mosby. On the first issue the petitioner is sustained. As to the second issue, unquestionably respondent must be sustained. The contribution by petitioner of $5,000 in 1948 and $1,250 in 1949 to the Kansas Hotel Association for use by the Kansas Legal Control Council in the campaign to repeal prohibition laws of Kansas relating to the sale of intoxicating liquors clearly falls within the purview of section 23(q)(2) of the Internal Revenue Code of 1939, and section 29.23(q)-1 of Regulations 111, and hence is not deductible. Section 23(q)(2) of the Code denies deduction of contributions to organizations, a "substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation." Section 29.23(q)-1 of Regulations 111, dealing with contributions deductible under section 23(q)(2) of the Code provides: "Sums of money expended *74 for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses are not deductible from gross income." In Textile Mills Securities Corporation v. Commissioner, 314 U.S. 326, the Supreme Court held that the same provision appearing in Regulations 74 was equally applicable to deductions for business expenses; hence, an expenditure which violated the foregoing regulation would not be allowable as a deduction even under section 23(a). Mary E. Bellingrath, 46 B.T.A. 89, 92; McClintock-Trunkey Co., 19 T.C. 297; Roberts Dairy Co. v. Commissioner (C.A. 8), 195 Fed. (2d) 948, certiorari denied, 344 U.S. 865. Decision will be entered under Rule 50.