F. STRAUSS & SON, INC. OF ARKANSAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53669. Filed May 31, 1957.

*E. Chas. Eichenbaum, Esq.*, for the petitioner.
*John P. Higgins, Esq.*, for the respondent.

BRUCE, *Judge:* The respondent determined a deficiency in the income tax of petitioner for the calendar year 1950 in the amount of $20,990.36. Of the adjustments made by respondent the only one remaining in dispute is whether payment of $9,252.67 by petitioner to the Arkansas Legal Control Associates, Inc., in 1950 constituted an ordinary and necessary business expense of petitioner or, alternatively, whether such payment is deductible as a contribution within the meaning of section 23 (q), Internal Revenue Code of 1939.

FINDINGS OF FACT.

The stipulated facts, together with attached exhibits, are incorporated herein by this reference. Petitioner is a corporation organized under the laws of the State of Arkansas with its principal place of business in Little Rock, Arkansas. Petitioner kept its books and prepared its income and excess profits tax returns on an accrual basis of accounting. Its 1950 income and excess profits tax return was filed with the collector of internal revenue for the district of Arkansas. In the year 1950 petitioner was engaged in the wholesale liquor business.

Subject to provisions for countywide local option (Ark. Stat. Ann., secs. 48–801 and 48–807 (1947)), the sale of intoxicating liquor in Arkansas has been legal since 1935.

An initiative petition calling for an election on a statewide prohibition act was circulated in Arkansas, filed with the office of the secretary of state, placed on the ballot, and voted on in the general election held in Arkansas on November 7, 1950. The general purpose of the act was to make it unlawful to manufacture, sell, barter, loan, or give away intoxicating liquors within the State of Arkansas or to export from, import to, or transport the same within the State of Arkansas.

In May 1950 nine liquor wholesalers petitioned the Circuit Court of Pulaski County, State of Arkansas, to declare Arkansas Legal Control Associates, Inc. (hereinafter referred to as Control Associates), duly incorporated as a nonprofit corporation pursuant to the provisions of the State law. The Circuit Court of Pulaski County issued a certificate of incorporation to Control Associates on May 3, 1950. The stated objects and purposes of Control Associates provided, *inter alia:*

ARTICLE II

OBJECTS AND PURPOSES

*Section 1.*

The objects and purposes for which this organization is formed and the powers and rights which it shall exercise and enjoy are: To foster and promote in every and any lawful manner the interests of persons, firms, associations, corporations and others engaged or interested directly or indirectly in the alcohol beverage industry, or in any branch thereof, or in any industry or business alike or incidental thereto.

*Section 2.*

In furtherance, but not in limitation, of the foregoing general purposes, it is expressly provided that the organization shall have the following powers:

*       *       *       *       *       *       *

b. To engage in educational and publicity campaigns and programs.

c. To support improved regulatory laws governing the sale and use of alcohol

beverage, and to uphold the system of private enterprise in the manufacture, distribution and sale of alcohol beverage.

d. To provide honest opposition to the principles of prohibition, and its resulting evils.

e. To support related public relations programs.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　●

## ARTICLE V.

### USES

The corporation shall not be used for business purposes or make any contribution or expenditure in connection with any election at which Presidential or Vice Presidential electors or a Senator or Representative to Congress are to be voted for or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for the pecuniary gain or profit of its members, and no part of the net earnings of the corporation shall inure to the benefit of any member or private individual. The corporation may, however, support or oppose public laws or constitutional measures which its members and trustees deem against public interest and opposed to the purposes and objects of the corporation.

The purpose of the wholesalers in forming Control Associates was to provide means of coordination of their efforts in persuading the general public to vote against the proposed statewide prohibition act.

An application for exemption under section 101 (7) of the Internal Revenue Code of 1939 was filed with the Commissioner of Internal Revenue on May 25, 1951, by Control Associates. This application for exemption was rejected by the Commissioner on October 11, 1951. The letter of rejection provided in part as follows:

Inasmuch as the evidence on file in this office shows that your sole function and activity consisted of engaging in activities designed to influence legislation, through the use of the radio, advertisements in newspapers and dissemination of literature, it is the opinion of this office that you are not entitled to exemption from Federal income tax as a business league under the provisions of section 101 (7) of the Code, and that you are not an organization of the same general class as a chamber of commerce or board of trade within the meaning of Income Tax Regulations III [111], section 29.101 (7)–1. You will accordingly be required to file Federal income tax returns on Form 1120.

Contributions made to you are not deductible by the donors in computing their taxable net income in the manner and to the extent provided by section 23 (o) and (q) of the Code.

After the organization of Control Associates in 1950 petitioner paid the amount of $9,252.67 to that organization. Contributions totaling $126,265.84 were received by Control Associates for the period beginning May 30, 1950, and ending November 30, 1950. During that period over $100,000 was paid out by Control Associates for direct advertising through newspapers, radio, billboards, distribution of book matches, bar banners, special folders, and press releases. Such advertising con-

tained reasons and statistics designed to convince the voters that it was to the public interest to defeat the act. The balance of the contributions was paid out for related expenses of supervising and coordinating such advertising. The statewide prohibition act was defeated. On its income tax return for 1950 the petitioner deducted the $9,252.67 in dispute from gross income as business expense. The respondent disallowed such deduction.

OPINION.

The principal issue in this case is whether amounts paid by petitioner, a wholesale liquor dealer, to a corporation organized by nine Arkansas liquor wholesalers for the purpose of persuading Arkansas voters by various advertising devices to vote against a proposed prohibition act, are deductible as ordinary and necessary business expenses within the meaning of section 23 (a) (1) (A), Internal Revenue Code of 1939. It is clear that such payments are not deductible under section 23 (q), Internal Revenue Code of 1939, and the petitioner does not seriously contend otherwise.

The question involved herein has been determined many times by this and other courts. In *Textile Mills Corp.* v. *Commissioner*, 314 U. S. 326, the Supreme Court determined that certain amounts expended to provide publicity and promote propaganda seeking to influence proposed legislation were not deductible as "ordinary and necessary" business expenses within the meaning of section 23 (a) of the Revenue Act of 1928, the language of which is identical with the applicable language of section 23 (a) (1) (A) of the Internal Revenue Code of 1939.

We have recently had occasion to determine the principles involved in the instant case in *Herbert Davis*, 26 T. C. 49. There the petitioner was one of three licensed liquor dealers in Clinton, Tennessee, all of whom were restricted to operating within a 3-block area located approximately in the center of the Clinton business district. Petitioner made certain payments in 1950 for dues to an association of liquor dealers, the funds of which association were used in the main for propaganda purposes and for campaign expenses in conjunction with a 1950 liquor referendum, to influence voters to vote "wet." In that case we followed the rule of *Textile Mills* and held (p. 59) that the payments were not deductible as ordinary and necessary business expenses:

The law is well settled. In *Textile Mills Corp.* v. *Commissioner*, 314 U. S. 326 (1941), the Supreme Court, in a case involving donations made by a corporation, gave its approval to the substance of the regulations here involved when it sanctioned the then applicable provision of Regulations 74 containing precisely the same language presently included in Regulations 111, sections 29.23 (o)-1 and 29.23 (q)-1. The application of such principles to limit the deductibility of

donations of individuals under section 23 (o) by Regulations 111, section 29.23 (o)-1, is equally valid. *Textile Mills Corp., supra; Mary E. Bellingrath*, 46 B. T. A. 89 (1942) ; *Mrs. William P. Kyne*, 35 B. T. A. 202 (1936). We have also held that the principles embodied in such regulations were applicable as well under section 23 (a). *McClintock-Trunkey Co.*, 19 T. C. 297, 304 (Issue 2), reversed on another issue (C. A. 9, 1954) 217 F. 2d 329. See also *American Hardware & Eq. Co.* v. *Commissioner*, (C. A. 4, 1953) 202 F. 2d 126, affirming a Memorandum Opinion of this Court.

See also *Wm. T. Stover Co.*, 27 T. C. 434, and *Revere Racing Association* v. *Scanlon*, 232 F. 2d 816.

Petitioner recognizes the contrary effect of these cases. It is argued, however, that the rule of the *Textile Mills* case has been substantially narrowed by subsequent decisions of the Supreme Court, citing *Heininger* v. *Commissioner*, 320 U. S. 467, and *Lilly* v. *Commissioner*, 343 U. S. 90. The *Heininger* case involved the deductibility of lawyers' fees and other legal expenses incurred by the taxpayer in unsuccessfully contesting a Post Office fraud order. *Lilly* involved the deductibility of an optical company's payments to eye doctors, which payments amounted to one-third of the retail price of eyeglasses which were prescribed to patients by such eye doctors. Neither involved the question of the deductibility of expenditures used for lobbying purposes and are therefore distinguishable and do not come within the precedent of the *Textille Mills* case. See *Lilly* v. *Commissioner, supra*, at 95. Accordingly, we hold that the payments in issue are not deductible by the petitioner as an ordinary and necessary business expense.

*Decision will be entered that there is a deficiency in the amount of $10,386.12.*