Edwin L. Richman v. Commissioner.
Richman v. Commissioner
Docket No. 5463-64
United States Tax Court
T.C. Memo 1966-269; 1966 Tax Ct. Memo LEXIS 16; 25 T.C.M. (CCH) 1372; T.C.M. (RIA) 66269; December 14, 1966
*16 Held, that amounts expended in the taxable year 1961 by the petitioner, part owner of a farm in Indiana, for the purpose of increasing his farm income by attempting to effect changes in certain farm legislation pending before Congress, constituted expenditures for the promotion of legislation, which are not deductible under either section 162 or section 212 of the Internal Revenue Code of 1954. Edwin L. Richman, pro se, 4841 N. Lowell Ave., Chicago, Ill. James E. Caldwell, for respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1961 in the amount of $728.32. The only issue is whether the respondent erred in disallowing as deductions amounts claimed by the petitioner to have been expended by him in an effort to increase his farm income by attempting to effect certain changes in farm legislation pending before Congress. Findings of Fact Some of the facts have been stipulated and the stipulations are incorporated herein by this reference. The petitioner, a resident of Chicago, Illinois, filed his Federal income tax return for the taxable year 1961 with the district director of internal revenue, Chicago, Illinois. During the year 1961 the petitioner *18 was employed in Chicago as an agent for an insurance company and as a salesman for two other firms. During that year he also owned, jointly, with his brother, a 252-acre farm in La Porte County, Indiana. The farm was operated by a tenant on a fifty-fifty crop-sharing basis with petitioner and his brother. The petitioner's brother, together with the tenant, managed the farm. In his return for 1961 the petitioner reported $2,592.31 as his share of the net profit from the farm. The return disclosed that the gross income from the farm consisted principally of amounts received from sales of grain and dairy products. In the spring of 1961 the petitioner traveled to Washington, D.C., to acquaint himself with the provisions of the proposed agricultural bill of 1961 (S. 1643 and H.R. 6400) then pending before Congress. Later in 1961 he made other trips from Chicago to Washington in an effort to effect certain changes in the proposed legislation. He testified before the committees of Congress which were concerned with the proposed legislation and submitted thereto a summary of his recommended changes. Such summary included, among other proposed amendments, one which would provide for collecting *19 and assembling data with respect to the cost of producing milk on farms and the cost of marketing milk, for the purpose of developing a program to improve the income of dairy farmers. [1]
*20 In 1961 the petitioner also traveled in his automobile to areas in Wisconsin, Iowa, Indiana, and Michigan and contacted representatives of dairy and farm organizations to acquaint them with his efforts to obtain amendments to the pending legislation and to urge them to contact their representatives in Washington and urge support for his proposed amendments. He distributed literature to them which included a summary of the changes which he advocated and a form letter for distribution to farmers which stated in part: The objectives of the pending farm legislation are to improve, maintain and protect the prices and income of farmers. I believe that dairy farmers can gain these objectives for themselves if they will act now to insure that they will be the beneficiaries of any legislation enacted and not the economic victims of the functioning plans. To guarantee that you will benefit from this or any other legislation enacted, you will need to take steps to get into a position where you too can effectively utilize to your advantage the provisions of the legislation. I believe that this can be accomplished with your support and cooperation in developing a program that will provide *21 for the following steps. 1. To assemble and compile representative information from cooperating farmers that will reflect the true dairy farm situation. 2. To present effectively such information as to influence the constructive development of legislation that will benefit dairy farmers. 3. To solicit the support of Congressmen to gain the final enactment of the proposed legislation. (To lobby, if you please) 4. To work with (cooperate) those responsible for the administration of the enacted legislation. 5. To inform the cooperating dairy farmers, not only what is being accomplished but also what is planned to benefit them. During 1961 the petitioner was the unpaid organizational director of the now defunct National Dairymen's Association, Chicago, Illinois. However, in appearing before the Congressional committees and in contacting representatives of dairy and farm organizations in the Midwest, he was not acting on behalf of such organization, but on his own behalf. His purpose in attempting to effect the changes in the pending bills was to increase the income from the dairy operation on the farm which he and his brother owned. In his return for the taxable year 1961 *22 the petitioner claimed as a deduction the amount of $1,848.43 as business expense incident to his occupation as an insurance salesman or correspondent. Of this amount the respondent allowed as a deduction $325 and disallowed the remainder. In such return the petitioner also deducted as expenses incident to his farming operations the amount of $2,060 described as transportation, meals and lodging, telephone bills, etc., incurred in connection with his trips to Washington. In the notice of deficiency the respondent disallowed the full amount of $2,060 which was claimed. In connection with the above-mentioned trips to Washington in 1961 the petitioner expended $145.71 for transportation, $304.45 for hotel and telephone bills and $28.50 for multilithing. Opinion The question presented is whether the petitioner is entitled to deduct the amounts of $1,523.43 and $2,060 which the respondent disallowed. [2] The respondent having disallowed, in the notice of deficiency, the claimed deductions to this extent and not having conceded that such amounts were expended, the burden rests upon the petitioner to show that in fact the amounts were expended and that the expenditures constituted deductible *23 items. Burnet v. Houston, 283 U.S. 223, and Welch v. Helvering, 290 U.S. 111. The petitioner testified to the general effect that the amount of $2,060 represented amounts expended for transportation, meals and lodging, telephone bills, etc., in connection with trips to Washington in attempts to obtain certain amendments to farm legislation then pending before Congress, and that the amount of $1,523.43 represented amounts expended, including automobile expense, in connection with travel through certain Midwestern *24 states to visit representatives of farm and dairy organizations to enlist support for the legislative changes which he advocated. However, since he furnished substantiation of the expenditures only to the extent of $478.66, representing transportation and other expenses in connection with trips to Washington, we must conclude that he has not met his burden of proving the remainder of the claimed expenditures. See Louis Halle, 7 T.C. 245, affd. (C.A. 2) 175 F. 2d 500, certiorari denied 338 U.S. 949; Williams v. United States, (C.A. 5) 245 F. 2d 559; and J. J. Dix, Inc. v. Commissioner, (C.A. 2) 223 F. 2d 436, affg. on this issue a Memorandum Opinion of this Court. Furthermore, the amounts shown to have been expended are not deductible, nor indeed would the remaining amounts claimed but not substantiated be deductible, since it is well established that expenditures for the promotion of legislation or for carrying on propaganda relating thereto are not deductible. Section 1.162-15 of the Income Tax Regulations, as it existed in the taxable year 1961, provided in part as follows: (c)(1) Expenditures *25 for lobbying purposes, for the promotion or defeat of legislation, for political campaign purposes (including the support of or opposition to any candidate for public office), or for carrying on propaganda (including advertising) related to any of the foregoing purposes are not deductible from gross income. For example, the cost of advertising to promote or defeat legislation or to influence the public with respect to the desirability or undesirability of proposed legislation is not deductible as a business expense, even though the legislation may directly affect the taxpayer's business. * * *
(3) Expenditures for the promotion or the defeat of legislation include, but shall not be limited to, expenditures for the purpose of attempting to - (i) Influence members of a legislative body directly or indirectly, by urging or encouraging the public to contact such members for the purpose of proposing, supporting, or opposing legislation, * * * As pointed out by the Supreme Court in Cammarano v. United States, 358 U.S. 498, since 1938 (in the case of individuals) and since 1918 (in the case of corporations) the regulations have continuously provided that expenditures *26 for the promotion or defeat of legislation are not deductible from gross income. See also Textile Mills Securities Corporation v. Commissioner, 314 U.S. 326. In the Cammarano case, the Supreme Court specifically approved section 29.23(o)-1 of Regulations 111, which so provided, and stated in part: As was said in Textile Mills, "the words 'ordinary and necessary' are not so clear and unambiguous in their meaning and application as to leave no room for an interpretative regulation. The numerous cases which have come to this Court on that issue bear witness to that." 314 U.S., at 338, * * *. In the present cases there is before us regulatory language of more than 40 years' continuous duration expressly providing that sums expended for the activities here involved shall not be considered an ordinary and necessary business expense under the statute. The provisions of the Internal Revenue Code which underlie the Regulations have been repeatedly re-enacted by the Congress without the slightest suggestion that the policy expressed in these regulatory measures does other than precisely conform to its intent. * * *
Here we have unambiguous regulatory language, *27 adopted by the Commissioner in the early days of federal income tax legislation, in continuous existence since that time, and consistently construed and applied by the courts on many occasions to deny deduction of sums expended in efforts to persuade the electorate, even when a clear business motive for the expenditure has been demonstrated. We must conclude, therefore, that there can be no question as to the validity of the regulation here involved in providing that expenditures for the promotion of legislation or for carrying on propaganda relating thereto are not deductible from gross income. We think it is clear that the substantiated expenditures were made for the promotion of legislation within the meaning of the regulation. They were for trips to Washington to enable the petitioner to appear before committees of Congress to urge the enactment of certain amendments which he proposed to pending farm legislation. And it may be added that the remainder of the claimed expenditures, even if substantiated, would have to be considered as expenditures for the promotion of legislation or for carrying on propaganda related thereto, in view of the activities in connection with which *28 the petitioner claims they were made. At the hearing the petitioner attempted to show that his activities did not constitute "lobbying." However, as pointed out by the Supreme Court in the Cammarano case, the regulations provide that not only lobbying expenses, but also sums spent for the promotion or defeat of legislation and the exploitation of propaganda, are nondeductible. And it should be emphasized that the expenditures made are not deductible even though the petitioner's purpose in attempting to effect the changes in the legislation was to increase the income from the dairy operation conducted on the farm which he and his brother owned. We accordingly conclude that the petitioner is not entitled to deduct any portion of the amounts claimed under either section 162 or section 212 of the Internal Revenue Code of 1954. [3] See Cammarano v. United States, supra.See also Denver & Rio Grande Western Railroad Co., 38 T.C. 557. *29 It should be added that we are not here concerned with the provisions of section 162(e) of the Internal Revenue Code of 1954, as enacted by section 3(a) of the Revenue Act of 1962, which would permit the deduction of certain expenses and costs incurred in connection with appearances before, submission of statements to, or sending communications to, members or committees of Congress with respect to legislation or proposed legislation of direct interest to a taxpayer. Such provisions are not applicable to the year in question. By the express provisions of section 3(b) of the Revenue Act of 1962, the amendments made by subsection (a) are applicable to taxable years beginning after December 31, 1962. Decision will be entered for the respondent. Footnotes
1. The summary contained the following statement: This change in the proposed legislation will definitely provide that through the exercise of the powers conferred upon the Secretary under this Act, he can undertake such cost studies as will be in the interest of producers. Therefore, the Secretary could provide the means through the U.S.D.A. Agricultural Research Service to collect and assemble data that would reflect the changes in the cost of producing milk on the farm. Ultimately this same Service could be used to determine the average cost of producing milk on farms, in the various sections of the United States. This information would be invaluable to the National Farmer Advisory Committee for milk producers in the constructive development of a program to improve the income of dairy farmers. This same recommended change in the proposed Act will also cover research on marketing costs. Therefore, the Secretary could provide the means to undertake such milk marketing costs studies as he would deem necessary to make the current reported prices paid to farmers for milk meaningful. * * * The petitioners also stated in testimony before the Senate Committee: The suggested amendments should result in legislation that would guarantee that the appointed National Committee could function from the beginning to constructively develop a program that will improve the incomes of all dairy farmers. * * *↩
2. Sec. 162 of the Internal Revenue Code of 1954 provides in part: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * Sec. 212 of the Internal Revenue Code of 1954 provides in part: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income: (2) for the management, conservation, or maintenance of property held for the production of income:↩
3. It is immaterial whether the petitioner relies upon section 162 or section 212 of the Code. A deduction under section 212 is subject, except for the requirement of being incurred in connection with a trade or business, to all the restrictions and limitations that apply in the case of a deduction under section 162. See McDonald v. Commissioner, 323 U.S. 57↩.